Filed 4/21/17

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064374 |
| v. | (Super.Ct.No. FSB1102702) |
| KEITH JULIAN COSTELLA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Michael A. Smith, Judge. Affirmed with directions.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendant and appellant, Keith Julian Costella, shot his victim, dumped his body in an undeveloped area next to a highway, and set fire to it.  A jury convicted him of second degree murder (Pen. Code, § 187, subd. (a))[1] and arson of forest land (§ 451, subd. (c)).  The jury also found defendant personally discharged a firearm and caused the death of his victim.  (§ 12022.53, subd. (d).)  The court sentenced defendant to 40 years to life for murder and the firearm enhancement and a concurrent term of two years for arson of forest land.

Defendant primarily contends there was insufficient evidence that "forest land" was burned within the meaning of the arson statute, and we should therefore reverse his arson conviction.  The statutory definition of forest land includes "brush covered land." (§ 450, subd. (b).)  We conclude substantial evidence demonstrated this land was brush covered and thus constituted forest land.

Defendant further argues we should order a limited remand pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), so that the parties may make a record in anticipation of his youth offender parole hearing during the 25th year of his sentence. The People concede he is entitled to a limited remand for this purpose.

Accordingly, we affirm defendant's arson conviction but order the limited remand pursuant to *Franklin*.  We also order a correction to the abstract of judgment and

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

2

sentencing minutes to accurately reflect the sentence the court pronounced. In all other respects, we affirm the judgment.

## II. FACTS AND PROCEDURE[2]

The victim, Craig Kubitz, was defendant's friend; they also did maintenance and handyman work together. Michelle Luevano was defendant's girlfriend at the time of these events. One night in February 2010, the victim called and said he wanted to pick up money defendant owed him. Defendant told Luevano that he was going to shoot the victim if he asked for money when he arrived. Defendant took a shotgun from his bedroom closet and placed it by his bedroom door.

When the victim arrived, defendant sent Luevano to the bedroom and, shortly after, shot the victim with the shotgun. He left the victim's body in their apartment for five nights. On the sixth night, he loaded the body into Luevano's truck because he wanted to dump it somewhere. The two of them set out in the truck until he saw a spot alongside the highway in Redlands, near Wabash Avenue and Reservoir Road. Defendant parked and left Luevano in the truck for a few minutes. They then went to get gasoline and returned to the same spot. He grabbed a container from the back of the truck and ran into the darkness. A few seconds later he ran back to the truck and instructed Luevano to drive away. In the rearview mirror, she saw flames.

---

[2] Because defendant does not challenge the sufficiency of the evidence underlying his murder conviction, we only briefly describe the facts supporting that charge.

3

The firefighter who responded to the scene of the fire found the victim's body burning. The body was almost entirely covered with second- to third-degree burns. Captain Robert Sandberg of the Redlands Fire Department investigated the fire. He concluded a human caused direct ignition of the fire.

At trial, Captain Sandberg described the area of the fire variously as "a vacant lot" close to the highway "with some grass and weeds growing," an area with "some vegetation," and terrain with "[j]ust some grass, weeds, [and] small vegetation." Besides the victim's body, "small bits of grass around the body" burned. In his contemporaneous report, the captain described the area surrounding the body as "bare dirt," but based on his review of the photographs in evidence, he noted "grass, land, and other vegetation." The firefighter who extinguished the fire described "bare dirt" around the body and a "mix of bare dirt and grass and small brush" around the area.

Several trial exhibits were photographs depicting the area of the fire. Exhibits 4, 7, and 9 show the body and the area immediately surrounding it. The immediately surrounding area is a mixture of bare dirt, grass, and weeds. Exhibits 2 and 8 are aerial views of the scene and thus depict substantially more of the area. They show mostly bare dirt outside the area immediately surrounding the body. Exhibit 1 is an even wider aerial view of the terrain. It shows that the undeveloped plot of land is adjacent to the freeway, and a residential neighborhood borders it on at least one side. This exhibit also shows much more green vegetation covering the plot of land farther outside the immediate location of the fire.

The court instructed the jury on arson of forest land and the lesser offense of unlawfully causing a fire of forest land. (§§ 451, subd. (c), 452, subd. (c).) It instructed the jury on the definition of forest land thusly: "Forest land means brush-covered land, cut-over land, forest, grasslands, or woods." (CALCRIM No. 1515.) During deliberations, the jury sent this note to the court: "We would like to know what the definition of brush-covered land is." The court responded: "So there is no specific definition for brush covered land. There is no special legal definition. So you should use your commonsense everyday meaning of what that would be, okay. I could look in the dictionary and I don't think there is anything on brush covered land but I will look. [¶] No, there is not anything in the dictionary. So it's just your normal everyday understanding of what that term would mean, okay." As we note above, the jury convicted defendant of arson of forest land.

### III. DISCUSSION

A. *Defendant's Conviction for Arson of Forest Land*

Defendant contends we must reverse his arson conviction because there was insufficient evidence that he burned "forest land" within the meaning of the arson statute. (§ 451, subd. (c).) We disagree.

Although defendant states this as a challenge to the sufficiency of the evidence, at the heart of this case lies a question of statutory interpretation—the meaning of forest land—which we consider de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) To the extent we must determine whether there was sufficient evidence of forest land, we

5

consider whether the record "'"discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" (*People v. Brown* (2014) 59 Cal.4th 86, 105.)

Our primary task in interpreting the statute is to determine the lawmakers' intent. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.) We begin with the words of the statute and their usual and ordinary meaning, which would typically be their dictionary definition. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126; *Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1189.) Their plain meaning controls, unless the words are ambiguous. (*People v. Gonzalez*, *supra*, at p. 1126.) "If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy." (*Ibid.*)

Section 451 defines four types of felonious arson: (1) arson causing great bodily injury; (2) arson causing an inhabited structure or inhabited property to burn; (3) arson of a structure or forest land; and (4) arson of property, meaning real property or personal property that is not a structure or forest land. (§ 451, subds. (a)-(d).) Arson causing great bodily injury carries the harshest penalty. (§ 451, subd. (a).) The remaining three types of arson carry progressively lower penalties. (§ 451, subd. (b)-(d).) "'Forest land' means any brush covered land, cut-over land, forest, grasslands, or woods." (§ 450, subd. (b).)

6

The Penal Code does not further define brush or brush covered.**3** According to

Merriam-Webster, the meaning of "brush" is "scrub vegetation" or "land covered with

scrub vegetation." (Merriam-Webster.com<https://www.merriam-webster.com/

dictionary/brush>[as of Apr. 21, 2017].) "Scrub," in turn, is "a stunted tree or shrub."

(Merriam-Webster.com<https://www.merriam-webster.com/dictionary/scrub>[as of Apr.

21, 2017].)

The evidence in this case shows the land at issue falls within the plain meaning of

"brush covered." (§ 450, subd. (b).) The responding firefighter described the area

immediately around the body as a combination of bare dirt, grass, and small brush, a

description that is borne out by the photographic evidence. Shrubs appear scattered

throughout the area. But this was only the immediate area around the body. The aerial

photograph of the scene (exhibit 1) shows green vegetation densely covered—and in

many places entirely covered—most of the undeveloped plot of land. Thus, the record

belies defendant's description of the land as "a few weeds in [a] dirt lot." Far from a dirt

lot, exhibit 1 reveals this area was filled with vegetation. Between the photographs of the

---

**3** Defendant tells us "[t]here appear to be no published cases directly addressing the definition of 'forest land,'" and indeed, we have not found any. In one arson case, the court merely noted that the description of the property at issue showed it was "within the statutory definition of forest land." (*People v. Hooper* (1986) 181 Cal.App.3d 1174, 1181, disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 198-199, fn. 7.) The property was described as in the desert "at an area which sheltered wildlife and which was covered with sagebrush, yucca trees, cactus and grass." (*People v. Hooper*, *supra*, at p. 1177.) But the court primarily had to decide whether unlawfully causing a fire (§ 452) was a lesser included offense of arson (§ 451), such that that the trial court should have instructed the jury on it. (*People v. Hooper*, *supra*, at pp. 1180, 1182.) There was no analysis of the meaning of forest land.

scene and the firefighters' description, the jury had ample evidence from which it could conclude this land was brush covered and therefore forest land.

Defendant argues the land must be continuously covered with brush to be considered forest land. But the fact that defendant set the fire on a segment of the land where the brush was comparatively sparse should not excuse him from criminal liability for arson of forest land. There is no requirement of continuous coverage in the statute or legislative history. In 1979, the Legislature repealed the former arson statutes and enacted the present statutory framework.[4] (Stats. 1979, ch. 145, §§ 1-17, pp. 337-341; *People v. Hooper*, *supra*, 181 Cal.App.3d at p. 1180.) As the author of the 1979 amendments explained in his letter to the Governor at the time: "Burning brush may sound harmless, but when the Santa Ana winds are blowing, and the weather is dry and hot, the result can be a Malibu fire." (David A. Roberti, Chairman, Joint Com. for Revision of the Pen. Code, letter to Governor Edmund G. Brown, Jr., June 25, 1979, p. 2.) And, as one supporter of the legislation from the California Department of Forestry put it: "Vegetation fires are unpredictable." (Testimony of Dick Diltz, Joint Com. for Revision of the Pen. Code & Senate Select Com. on Fire Services, Hearings on the Investigation and Prosecution of Arson Sen. Bill No. 2203 (Oct. 4, 1978), pp. 10, 14.)

---

[4] The People have filed a request for judicial notice of legislative history materials obtained from the files of the Attorney General's Legislative Affairs Unit. Defendant does not oppose the request, and in fact, he relies on some of the documents in his own briefing. We grant the request for judicial notice. (Evid. Code, § 452, subd. (c) [courts may take judicial notice of the official acts of the legislative, executive, and judicial departments of any state]; *People v. Snyder* (2000) 22 Cal.4th 304, 313, fn. 11.)

8

When brush catches fire, sparks from the fire need only wind to carry them to other nearby brush, and a small fire may quickly become a conflagration. The scene of this fire was part of a much larger plot of brush covered land. That sparks from the fire did not spread to the denser brush in close proximity was purely fortuitous for nearby residents and defendant. We reject defendant's implied premise—that an arsonist may set a fire in a brush scattered clearing of an otherwise brush covered area and thereby escape liability for arson of forest land. We see no requirement that every inch of the subject land be covered by brush. The jury's determination that the land at issue constituted forest land was supported by substantial evidence.

B. *Limited Remand Consistent with Franklin*

Defendant contends that, as in *Franklin*, *supra*, 63 Cal.4th 261, a limited remand is in order for him to make a record relevant to his eventual "youth offender parole hearing." (§ 3051, subd. (a)(1).) The People concede defendant is entitled to this limited remand. We agree with the parties that a limited remand is required.

The Legislature "enacted sections 3051, 3046, subdivision (c), and 4801, subdivision (c), to provide a parole eligibility mechanism for juvenile offenders." (*People v. Perez* (2016) 3 Cal.App.5th 612, 618.) The Legislature intended "to create a process by which growth and maturity of youthful offenders [could] be assessed and a meaningful opportunity for release established." (Stats. 2013, ch. 312, § 1, p. 2522.) With some exceptions not applicable here, the Board of Parole Hearings is required to conduct youth offender parole hearings for qualifying offenders during their 15th, 20th,

9

or 25th year of incarceration, depending on the sentence for their "controlling offense." (§ 3051, subds. (b), (h).) The controlling offense is the offense or enhancement for which the court imposed the longest term of imprisonment. (§ 3051, subd. (a)(2)(B).) Offenders who receive a sentence of 25 years to life for their controlling offense are entitled to a youth offender parole hearing during their 25th year of incarceration. (§ 3051, subds. (b)(3), (d).) As originally enacted in 2013, only persons under 18 at the time of their controlling offense were entitled to a youth offender parole hearing. (Stats. 2013, ch. 312, § 4, pp. 2524-2525.) But as of January 1, 2016, persons under 23 at the time of their controlling offense are entitled to a youth offender parole hearing. (§ 3051, subd. (a)(1); Stats. 2015, ch. 471, § 1, pp. 4174-4176.)

In *Franklin*, *supra*, 63 Cal.4th 261, the defendant shot and killed his victim at 16 years of age, and the trial court sentenced him to two consecutive terms of 25 years to life. (*Id.* at p. 268.) Our Supreme Court held that the enactment of sections 3051 and 4801, requiring youth offender parole hearings, mooted the defendant's constitutional challenge to his sentence, because the statutes gave him the possibility of release after 25 years of imprisonment. (*Franklin*, *supra*, at p. 268.) Still, the defendant had raised "colorable concerns as to whether he was given adequate opportunity at sentencing to make a record of mitigating evidence tied to his youth." (*Id.* at p. 269.) The statutes contemplate the Board of Parole Hearings may consider "youth-related factors, such as his cognitive ability, character, and social and family background at the time of the offense." (*Ibid.*; accord, §§ 3051, subd. (f)(1), (2), 4801, subd. (c).) "For example,

10

section 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime . . . may submit statements for review by the board.' Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the [defendant's] offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." (*Franklin*, *supra*, at pp. 283-284.) Additionally, section 3051, subdivision (f)(1) contemplates "'psychological evaluations and risk assessment instruments'" may be relevant to show "'any subsequent growth and increased maturity'" of the defendant, implying the availability of information about the defendant when he or she was a youth. (*Franklin*, *supra*, at p. 284.)

In *Franklin*, because the trial court had sentenced the defendant before the enactment of sections 3051 and 4801, "the trial court understandably saw no relevance to mitigation evidence at sentencing." (*Franklin*, *supra*, 63 Cal.4th at p. 269.) Given the changes in the legal landscape, our high court remanded the case for the trial court to determine whether the defendant had sufficient opportunity to make a record of mitigating evidence for later use at his youth offender parole hearing. (*Id.* at pp. 269, 284.) If the trial court determined the defendant had an insufficient opportunity to make a record, the court could then "receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of

11

Court, and subject to the rules of evidence." (*Id.* at p. 284.) While the defendant could place on record evidence that might be pertinent at his eventual youth offender parole hearing, the People could likewise put on record evidence demonstrating his "culpability or cognitive maturity, or otherwise bear[ing] on the influence of youth-related factors." (*Ibid.*)

Here, a limited remand is in order for the trial court to determine whether defendant had an adequate opportunity to make a record of information relevant to his eventual youth offender parole hearing, as required by *Franklin*. Defendant's controlling offense was the firearm enhancement (§ 12022.53, subd. (d)), for which the court imposed 25 years to life (as opposed to second degree murder, for which the court imposed 15 years to life) (§ 3051, subd. (a)(2)(B)). Defendant was 20 years old at the time of the offense and is therefore entitled to a youth offender parole hearing during his 25th year of incarceration. (§ 3051, subd. (b)(3).) When the trial court sentenced defendant in September 2015, the amendments making defendants under 23 eligible for youth offender parole hearings had not yet taken effect. (*People v. Perez*, *supra*, 3 Cal.App.5th at p. 619.) Nor had the Supreme Court decided *Franklin*, *supra*, 63 Cal.4th 261. (*People v. Perez*, *supra*, at p. 619.) The trial court thus had no reason to permit defendant to make a record for later use at a youth offender parole hearing.

Although defendant's foster mother gave a brief statement at his sentencing hearing, the probation report contains scant information about defendant personally, and the record does not contain a sentencing memorandum submitted by defense counsel.

12

We order a limited remand for the court to determine whether defendant had an adequate chance "to make an accurate record of . . . [his] characteristics and circumstances at the time of the offense," so that the Board of Parole Hearings may properly discharge its duty at his eventual youth offender parole hearing. (*Franklin*, *supra*, 63 Cal.4th at p. 284; *People v. Windfield* (2016) 3 Cal.App.5th 739, 769, review granted Jan. 11, 2017, S238073 [ordering a limited remand under *Franklin* for the court to determine whether the defendant had an adequate opportunity to make a record for the later hearing required by §§ 3051 & 4801].) If the court answers this question in the negative, it should allow both parties to make such a record.

C.  *Correction to Abstract of Judgment and Sentencing Minutes*

Defendant points out the sentencing minutes and abstract of judgment show his two-year sentence for arson of forest land running *consecutive* to the 40-year-to-life term he received for second degree murder and the firearm enhancement, yet the trial court orally pronounced the two-year term to be *concurrent*. "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) We shall direct the court to correct this error in the sentencing minutes and the abstract of judgment.

## IV. DISPOSITION

The matter is remanded for the limited purpose of determining whether defendant had an adequate opportunity to make a record of his characteristics and circumstances at

the time of the offense, consistent with *Franklin*, *supra*, 63 Cal.4th at pages 286 and 287, and if he did not, for the parties to make such a record for his eventual youth offender parole hearing.  The clerk of the superior court is directed to issue a nunc pro tunc minute order accurately setting forth defendant's sentence, to wit, that he shall serve the two-year term for arson of forest land (count 2) concurrently with the remainder of his sentence on count 1.  The clerk of the superior court is further directed to issue a corrected abstract of judgment showing his sentences on counts 1 and 2 running concurrently and to forward a copy of the abstract to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

FIELDS
J.

14