Filed 6/30/21  P. v. Henderson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEMETRIUS VERDELL HENDERSON,<br><br>    Defendant and Appellant. | C091536<br><br>(Super. Ct. No. 19F4273)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 10, 2021, be modified as follows:

The sentence starting on the last line of page 5 and continuing onto page 6, beginning with "Where the property burned" is deleted and replaced with the following:

Where the property burned is "forest land" the crime is "a felony punishable by imprisonment in the state prison for two, four, or six years."

1

There is no change in the judgment.  Appellant's petition for rehearing is denied.

FOR THE COURT:


  /s/
ROBIE, Acting P. J.


  /s/
HOCH, J.


  /s/
RENNER, J.

Filed 6/10/21  P. v. Henderson CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C091536 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F4273) |
| v. | |
| DEMETRIUS VERDELL HENDERSON, | |
| Defendant and Appellant. | |

Defendant, Demetrius Verdell Henderson, appeals a judgment entered following a jury's determination that he committed arson of forest land; resisted, obstructed, or delayed an officer; and battered an officer.  Defendant argues:  (1) substantial evidence does not support that he burned " '[f]orest land' " as defined by Penal Code section 450, subdivision (b)[1] and (2) the trial court's ability to pay determination was improperly

---

[1]     Further undesignated statutory references are to the Penal Code.

1

based on a determination that he could pay the assessed fines and fees out of his disability payments. The People oppose defendant's sufficiency argument, but concede remand is required to clarify the court's ruling on defendant's ability to pay. For the reasons explained herein, we conclude a limited remand is required. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The People's July 16, 2019, complaint charged defendant with arson of forest land (§ 451, subd. (c); count 1); resisting, obstructing, or delaying a police officer (§ 148, subd. (a)(1); count 2); and battery on a police officer (§ 243, subd. (b); count 3). Defendant pleaded not guilty, waived a preliminary hearing, and the matter was tried to a jury.

Pertinent to defendant's claims on appeal, at trial, the People presented evidence that P.R. was leaving work at the tribal health center around noon when she saw defendant, who was naked, in an area beyond the parking lot's fence. Defendant was situated between that fence and Highway 44, and P.R. noted him going in and out of a bush. Shortly thereafter, P.R. saw flames in that area. Defendant was alone, and P.R. did not see him make any effort to extinguish the flames.[2] Another employee from the tribal health center saw the flames and ran outside with a fire extinguisher, which a county worker used to put out the fire before authorities arrived.

Officers Nicholas Weaver and Jacob Ruiz, who were in uniform, responded to the scene. They climbed over the fence separating "the parking lot from the shrubbery on the side of highway 44" and encountered defendant, naked and covered in dirt and leaves like he had been rolling on the ground. He was dumping water on himself and yelling

---

[2]     People's exhibit No. 1 is a security camera video played for the jury which, although partially obscured by trees from the parking lot, reveals flames and smoke in vegetation beyond the parking lot's border.

2

nonsensically. Defendant had what was later determined to be a colostomy port in his abdomen, which along with defendant's erratic behavior, caused Officer Weaver to call for medical assistance. Defendant was nonresponsive to Weaver's questions. Next to defendant was a six-foot-wide bush or area of brush and a burnt spot on the hill. Much of it was smoldering, but some of it still had some small flames.

While they were waiting for the requested medical assistance, defendant threw a one-gallon jug of what smelled like urine at Officer Ruiz, hitting him in the chest and splashing on Ruiz's face, eyes, nose, mouth, and chest. The officers handcuffed defendant placing him under arrest for assault, and Weaver told Ruiz to go for medical screening given his exposure to an unknown liquid. In the meantime, defendant attempted to flee by running up an embankment towards Highway 44. By that time, Officer Kevin Kimple was also on scene. Kimple and Weaver ordered defendant to stop, but defendant kept running. Officer Weaver caught defendant by the arm, and defendant repeatedly resisted by trying to face Weaver who was attempting to escort defendant to where they originally encountered him.

City of Redding Fire Inspector Michael Ham testified as an expert on the cause and origin of fires. He arrived at the scene when defendant was being taken into custody. Ham noted the burn area was approximately 10 feet by 10 feet, running uphill from the base of a bush. The burn area had light grass, a bush, and some trash. While the fire was small, it was still concerning because "fires that start relatively small can grow relatively large in a matter of minutes." The cigarette lighters and mirror that had been recovered from defendant's bag could have been used to start the fire. It was Ham's opinion that defendant, who was the only person in the area, had started the fire with one of his operational lighters. Ham did not believe the fire had been caused by cigarette butts, cooking equipment, or overhead wires because there was no evidence to support them as a source of ignition. Ham also opined the fire was not caused by a chain dragging or

exhaust malfunction because its ignition point was too far from the highway[3] and the parking lot. Ham took pictures of the brush that burned, as well as the general area where the fire occurred, which showed dense brush or shrubbery on a hill with grass, weeds, and garbage at its base.

Following the presentation of this evidence, defendant moved under section 1118.1 for acquittal on the arson count, which the trial court denied. Thereafter, the court instructed the jury on arson of forest land and the lesser offense of unlawfully causing a fire of forest land. (§§ 451, subd. (c), 452, subd. (c).) In so doing, the court instructed the jury that "[f]orest land means brush covered land, cut over land, forest, grass lands, or woods." (See CALCRIM Nos. 1515, 1530.) After about an hour of deliberations without any questions, the jury found defendant guilty on all counts.

On January 31, 2020, the court sentenced defendant to the midterm of four years on the arson court, plus concurrent sentences of one year each on the two misdemeanor convictions, with credit for 204 days actual credit plus 204 days conduct credit for a total of 408 custody credits. The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a 10 percent administrative fee on that fine (§ 1202.4, subd. (l)), a $300 stayed parole revocation restitution fine (§ 1202.45), three $40 court operations assessment fees totaling $120 (§ 1465.8, subd. (a)(1)), and three $30 court facilities assessment fees totaling $90 (Gov. Code, § 70373). The court reserved jurisdiction to determine victim restitution.

Defendant timely appealed.

---

[3]     The highway was 20 to 30 feet away from the ignition point.

4

# DISCUSSION

## I

### *Arson of Forest Land*

Defendant contends substantial evidence does not support his conviction for arson of forest land (§ 451, subd. (c)) as "forest land" is as defined by section 450, subdivision (b). He argues: (1) reference to dictionary definitions show brush covered land must be densely populated with brush and (2) because brush covered land is included in a list of other terms embodying large tracks of land, brush covered land must be of similar scope in order to qualify as forest land for purposes of arson. Given his clarified definition, defendant argues insufficient evidence supports that the land in question was indeed "brush covered."[4] We disagree.

" 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] ' "[O]ur role on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' [Citation.]" (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

Section 451 provides: "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." Where the property burned is

---

**4** We focus on defendant's brush covered land arguments because that is the theory presented by the prosecution to the jury.

"forest land" the crime is "a felony punishable by imprisonment in the state prison for three, five, or eight years."  (§ 451, subd. (c).)  " 'Forest land' means any brush covered land, cut-over land, forest, grasslands, or woods."  (§ 450, subd. (b).)  To the extent defendant's challenge requires us to interpret the meaning of "forest land," we perform this task de novo.  (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)

"Our primary task in interpreting the statute is to determine the lawmakers' intent.  (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.)  We begin with the words of the statute and their usual and ordinary meaning, which would typically be their dictionary definition.  (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126; *Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1189.)  Their plain meaning controls, unless the words are ambiguous.  (*People v. Gonzalez, supra*, at p. 1126.)  'If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.'  (*Ibid*.)"  (*People v. Costella* (2017) 11 Cal.App.5th 1, 5-6 (*Costella*).)

In approaching this task, *Costella* appears to be the only published opinion to analyze the *meaning* of brush covered land as part of section 450's forest land definition.  (*Costella, supra*, 11 Cal.App.5th at pp. 5-6.)  Because brush covered land and/or brush were not further defined by the Penal Code, *Costella* looked to the dictionary definition of those terms.  (*Id*. at p. 6.)  "According to Merriam-Webster, the meaning of 'brush' is 'scrub vegetation' or 'land covered with scrub vegetation.'  (Citation.)  'Scrub,' in turn, is 'a stunted tree or shrub.'  (Citation.)"  (*Ibid*.)  There was, however, no indication in the statute or legislative history that continuous coverage of dense brush was required for criminal liability.  (*Id*. at p. 7.)

Applying this definition, the *Costella* court found sufficient evidence supported the defendant's conviction.  (*Costella, supra*, 11 Cal.App.5th at p. 6.)  The record revealed that defendant had set fire to a murder victim on the side of a highway in a place with bare dirt, grass, and small brush scattered throughout the area.  (*Id*. at p. 4.)

6

Nonetheless, aerial photographs of the plot showed much of the land was covered with dense vegetation.  (*Id.* at p. 5.)  Because there was no requirement of continuous coverage, the court concluded sufficient evidence supported that defendant had committed arson of forest land.  (*Id*. at pp. 6-7.)

We do not find "brush covered land" to be an ambiguous term, and thus, the plain meaning as described in *Costella* is instructive.  (See *People v. Gonzalez, supra*, 43 Cal.4th at p. 1126.)  We note that nothing in the cognizable legislative history of Senate No. Bill 116 (1979-1980 Reg. Sess.), which enacted the changes at issue in this case, suggests that brush covered land should be construed to have the special, more narrow meaning that defendant requests.[5]  Rather, a major purpose of this legislation was to "generally simplify and reorganize the laws concerning arson."  (Judicial Council of Cal., Analysis of Sen. Bill No. 116 (1979-1980 Reg. Sess.) May 31, 1979, p. 2 [transmitted to Senate/Assembly committees & Governor].)  In pursuit of this goal, the enactment replaced "archaic language with simple, understandable English," for example by simplifying the definition of arson "by referring to a 'structure, property, or forest land' rather than a 'rick or stay of hay', 'pile of plants', etc."  (State and Consumer Services Agency, Analysis of Sen. Bill No. 116 (1979-1980 Reg. Sess.) June 26, 1979.)

---

[5]    We deny defendant's request for judicial notice of a letter to the Governor from the bill's author.  There is no evidence this letter or its views were transmitted to the legislature as a whole, and thus, they do not constitute cognizable legislative history.  (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 37.)  We grant defendant's request for judicial notice of the Department of Forestry enrolled bill report.  (*Ibid.*)  This report states the legislation was designed to both simplify the wording of the arson laws and bring the punishment for burning forest land to the same level of punishment for burning an unoccupied structure.  This recognized that "a person who sets fire to a wildland area creates a greater threat to life and property than many of the single building unoccupied structures that are the subject of arson."  (Cal. Dept. of Forestry, Enrolled Bill Rep. on Sen. Bill No. 116 (1979 Gen. Sess.) June 26, 1979, p. 1.)

7

Accordingly, it is appropriate that we give the term "brush covered land" its plain meaning.[6]

Applying that meaning, we conclude the record contains substantial evidence supporting defendant's conviction for arson of forest land (§ 451, subd. (c)). Whether the land in question qualified as "forest land" under the statute was not specifically litigated below, and as a result, the record is relatively sparse. However, there is evidence, which taken in the light most favorable to the prosecution, supports defendant's conviction. (*In re V.V., supra*, 51 Cal.4th at p. 1026.)

Here, the testimony established that defendant burned an area that was approximately 10 feet by 10 feet, running uphill from the base of a bush. The burn area had light grass, a bush, and some trash. The burn area in question was described as a six-foot-wide bush or area of brush. Much of it was smoldering when authorities arrived, but some of it still had some small flames. Testimony also established responding officers climbed over the fence separating "the parking lot from the shrubbery on the side of highway 44" in order to reach defendant and the burn area. While the precise dimensions of land on which the fire occurred are unknown, the fire was set at least 20 to 30 feet from Highway 44. Further, surveillance video and pictures taken at the scene do show areas of dense brush or shrubbery on a hill with grass, weeds, and garbage at its base.

---

[6] In so finding, we reject defendant's arguments that reversal is required because a narrow construction is necessary to maintain conformity with other terms in the forest land definition (see *People v. Prunty, supra*, 62 Cal.4th at p. 73 [warning against construing listed terms in a manner which would render them " 'unnecessary or redundant . . . or . . . markedly dissimilar to the other items in the list' "]) and that under such construction, the evidence is insufficient to sustain his conviction. We find it unnecessary to decide how big a plot of land must be to qualify as "brush covered land" for purposes of the arson statute. Rather, we note that whatever the parameters of the size qualification may be, they are met in this case.

Based on this record, we conclude substantial evidence supports that the land was "brush covered," and thus, we will uphold defendant's conviction for arson of forest land.

II

*The Ability to Pay Determination*

Defendant argues the trial court erred in basing its ability to pay determination on an assumption that he could pay the assessed fines and fees by virtue of his disability payments in violation of title 42 United States Code section 407(a). The People concede that if the trial court determined defendant could pay because he would make payments from his disability funds, that would be error and request we remand the matter so that the trial court may clarify its ability to pay determination.

While a sentencing court may take disability payments into account in assessing a defendant's entire financial situation when determining a defendant's ability to pay (*In re J.G.* (2019) 6 Cal.5th 867, 878-884 [victim restitution]), it is improper for a court to find an ability to pay based on an assumption that the disability payments would be the source of any such payments. (*Id*. at pp. 884-885.)

Here, the trial court imposed a $300 restitution fine (§ 1202.4, subd. (b)), a 10 percent administrative fee on that fine (§ 1202.4, subd. (l)), a $300 stayed parole revocation restitution fine (§ 1202.45), three $40 court operations assessment fees totaling $120 (§ 1465.8, subd. (a)(1)), and three $30 court facilities assessment fees totaling $90 (Gov. Code, § 70373). The court reserved jurisdiction to determine victim restitution.

Thereafter, defense counsel requested the trial court waive the 52 hours of public defender fees in light of defendant's indigency and despite his receipt of Social Security disability benefits (SSI benefits). In response, the court found defendant did not have the ability to pay for his public defender and then addressed the other fines and fees assessed sua sponte. The court noted it had considered defendant's indigency in not imposing the

9

normal $780 base fine for a felony conviction and in setting the restitution fine at the statutory minimum.

The trial court then stated in pertinent part: "So the Court finds in light of the defendant's admission in his letter to the Court that he will be receiving SSI and his period of incarceration, I do believe he'll have the ability to pay just the minimum fines that I set. [¶] Mr. Henderson, I want to express something to you, sir. The reason I reduced the fines that were recommended by probation is because I want to give you the best opportunity to succeed when you are released from prison. And I realize, sir, that you now being eligible for SSI benefits is probably going to help you tremendously in that regard as expressed to the Court in your letter to the Court. So I took that into account." It is unclear on this record whether the court was assuming defendant would pay the fines and fees assessed directly from his SSI benefits. While defendant was homeless and indigent at the time of his arrest, his probation report detailed periods of gainful employment, thus not foreclosing the possibility that defendant would have a future ability to pay from nondisability sources. Accordingly, we will remand the matter to allow the court to clarify its finding in light of the guidance provided by *In re J.G., supra*, 6 Cal.5th at pages 878-885.

## DISPOSITION

The matter is remanded so that the trial court may clarify its ability to pay determination consistent with the guidance provided herein.  In all other respects, the judgment is affirmed.

/s/
HOCH, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
RENNER, J.

11