Filed 6/8/26  P. v. Quevedo CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ISRAEL QUEVEDO,<br><br>     Defendant and Appellant. | A171294<br><br>(San Mateo County<br> Super. Ct. No. 23-SF-009891-A) |

Defendant Israel Quevedo appeals his conviction for arson of forest land.  (Pen. Code,[1] § 451, subd. (c).)  He argues there is insufficient evidence proving he burned forest land as that term is defined by section 450, subdivision (b).  We agree and, accordingly, we reverse the arson conviction and remand for a full resentencing.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] As a result of our disposition, we need not address Quevedo's other arguments for reversal, which are based on alleged instructional errors.

1

## I. BACKGROUND

Quevedo was charged by information with felony arson of forest land[3] (§ 451, subd. (c); count 1) and misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 2), with a probation enhancement (§ 1203, subd. (k)) alleged as to count 1.

During the jury trial, a witness testified that in June 2023, he was driving slowly on El Camino Real in San Mateo when he saw Quevedo "starting a fire on the grass northbound." There was a "grassy area" to the left of the sidewalk, then there was the sidewalk, and on the other side of the sidewalk there was another piece of grass. The grassy area was dry with "a bunch of debris, grass or weeds." He saw Quevedo kneel down and throw a branch on the fire, which had flames about two feet high and one foot wide. The witness continued driving then pulled into a driveway a block and a half away, where he watched Quevedo and called 911. He could see smoke about 10 feet high but did not see flames from that distance. As the witness was on the phone with the 911 dispatcher, Quevedo walked up El Camino Real towards him. Quevedo stopped in front of the witness's truck and threw a big asphalt piece of rock into the street. Quevedo then crossed the street and went into a gas station.

Another witness was jogging on El Camino Real and saw "some shrubbery . . . smoldering on the ground." The smoldering was on the sidewalk's "grassy area," with "shrubs around." The man he had seen kneeling down over the area had walked away before the jogger got to the

---

[3] The information charged Quevedo with arson of a structure or forest land, but Quevedo states that the trial court, without objection, amended the accusation to charge only arson of forest land.

site. The jogger called 911 and a person came from across the street and doused the area with a water bottle.

A San Mateo police officer described the location as a residential area, with housing on both sides of El Camino Real, which is a busy street. There was no fire or flames burning when he arrived at the site. The officer saw three burn marks, which he knew were burn marks because they were the only spots where there was no grass and he could see burn mark residue—black char or ash. He described the area where the burn marks were located as a "line of grass" and commented on "the burnt grass" at the scene.

Several photographs of the site, taken by the police officer, were admitted as evidence at trial. Exhibit 2 provides a wider view of the area. Next to the road is a raised curb area with different sections. Immediately next to the road is a strip of vegetation—which appears to be about the same width as the paved sidewalk—running the length of the block. What appears to be dried or dead grass and weeds cover most of the strip. Some small shrubs grow almost in a row near a portion of the edge of the strip and trees run down the middle of it. Three burn marks identified by the police officer can be seen in different areas of the vegetation strip immediately surrounded by dried or dead grass. Moving away from the road, a paved sidewalk is next to the strip of vegetation and, on the other side of the sidewalk, there is another strip of vegetation and then a fence. Exhibits 11A through 11E are zoomed in photographs showing the three burn marks. The burned areas look like dirt and the areas immediately surrounding them appear to be dried or dead grass and weeds.

San Mateo police officers apprehended Quevedo when he walked out of the gas station store. They searched him and found a lighter and methamphetamine. The jury convicted Quevedo of both counts and the trial

court sentenced him to the low term of two years in prison, with credit for time served.

## II. DISCUSSION

Quevedo challenges his arson conviction, arguing there is insufficient evidence that he burned forest land as that term is defined by section 450, subdivision (b).[4]

### A. *Legal Principles and Standard of Review*

Section 451 provides: "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned . . . any structure, forest land, or property." Section 451 identifies four types of felonious arson: (1) arson causing great bodily injury; (2) arson causing an inhabited structure or property to burn; (3) arson of a structure or forest land; and (4) arson of property. (§ 451, subds. (a)–(d).) Section 450, subdivision (b), defines forest land as "any brush covered land, cut-over land, forest, grasslands, or woods." By contrast, property "means real property or personal property, *other than* a structure or *forest land*." (§ 450, subd. (c), italics added.) The maximum sentence for arson of a structure or forest land is double that of the maximum sentence for arson of uninhabited property. (§ 451, subds. (c)–(d).)

"[A]t the heart of this case lies a question of statutory interpretation— the meaning of forest land—which we consider de novo." (*People v. Costella* (2017) 11 Cal.App.5th 1, 5 (*Costella*); see also *People v. Prunty* (2015) 62 Cal.4th 59, 71.) "To the extent we must determine whether there was sufficient evidence of forest land, we consider whether the record ' " 'discloses substantial evidence—evidence that is reasonable, credible and of solid

---

[4] Quevedo does not challenge his misdemeanor possession conviction (count 2).

4

value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Costella*, at p. 5; *Prunty*, at p. 71.)  We examine the whole record in the light most favorable to the judgment and we do not reweigh evidence.  (*People v. Oyler* (2025) 17 Cal.5th 756, 820.)  In the end, "[t]he only evidentiary question before us is whether the prosecution—consistent with the theory it advanced regarding what constituted [forest land]—presented sufficient proof in this case."  (*Prunty*, at p. 85.)

"Our primary task in interpreting the statute is to determine the lawmakers' intent.  [Citation.]  We begin with the words of the statute and their usual and ordinary meaning, which would typically be their dictionary definition.  [Citations.]  Their plain meaning controls, unless the words are ambiguous.  [Citation.]  'If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.' "  (*Costella, supra*, 11 Cal.App.5th at pp. 5–6.)

### B. Analysis

It appears undisputed that the site here does not fall within the statutory definition of forest land as cut-over land, forest, or woods.  (See § 450, subd. (b).)  The People argue it constitutes forest land as grasslands or brush covered land.  (See *ibid*.)  We disagree.

#### 1. Grasslands

Merriam-Webster defines "grassland" as "farmland occupied chiefly by forage plants and especially grasses," or "land on which the natural dominant plant forms are grasses and forbs,"[5] or "an ecological community in which the characteristic plants are grasses."  (<https://www.merriam-webster.com/dictionary/grassland> [as of June 8, 2026].)  Dictionary.com

---

[5] A "forb" is defined as "an herb other than grass." (<https://www.merriam-webster.com/dictionary/forb> [as of June 8, 2026].)

5

states "grassland" is "an area, as a prairie, in which the natural vegetation consists largely of perennial grasses, characteristic of subhumid and semiarid climates," or "land with grass growing on it, especially farmland used for grazing or pasture." (<https://www.dictionary.com/browse/grassland> [as of June 8, 2026].)

Based on these definitions and the language of sections 450 and 451, we agree with Quevedo that the mere presence of grass is insufficient to make an area a grassland. The statutes distinguish between arson of forest land, including grasslands, and arson of other types of uninhabited property, suggesting that the Legislature intended forest land to mean something other than any land on which grass grows. The definitions suggest a "grassland" is an open land or prairie, occupied largely by grasses, rather than just any land with grass on it, such as a lawn or park.

To the extent the plain meaning of section 450 is ambiguous, the legislative history of the arson statutes also supports a narrower interpretation of "grasslands" that emphasizes the natural character of such areas. Instead of punishing arson of "forest land," the previous version of one of the arson statutes prohibited the willful and malicious burning of any "growing or standing grain, grass or tree, or *any grass*, forest, woods, timber, brush-covered land, or slashing, cutover land." (Former § 449c; see Stats. 1976, ch. 1139, § 203, p. 5119, italics added.) In 1979, Senate Bill No. 116 reorganized and consolidated multiple Penal Code sections relating to different forms of arson into sections 450 and 451 that were substantially similar to the current versions. (See Stats. 1979, ch. 145, §§ 6, 8, pp. 338–339.) The amendment from "any grass" to "grasslands" suggests the Legislature intended to narrow the types of grassy areas giving rise to heightened punishment for arson.

6

In making the changes to the arson statutes, the Legislature sought to make the statutes more consistent, more understandable, and easier to prosecute. (See David A. Roberti, Chairman, Joint Com. for Revision of the Pen. Code, letter to Governor Edmund G. Brown, Jr., June 25, 1979, Sen. Bill No. 116, ch. 145.) The author of the 1979 amendments confirmed the Legislature intended to narrow the scope of undeveloped property associated with heightened punishment for arson, stating: "In the reorganization [of the arson statutes,] grasslands and forest fires are more narrowly defined and are treated the same as arson fires of buildings." (*Ibid*.) Likewise, the former California Department of Forestry (now the California Department of Forestry and Fire Protection) stated the revisions "would put wildland arson on the same basis penalty wise as arson of an unoccupied structure. This recognizes the fact that in many instances a person who sets fire to a wildland area creates a greater threat to life and property than many of the single building unoccupied structures that are the subject of arson." (Cal. Dept. of Forestry, Analysis of Sen. Bill No. 116 (1979 Gen. Sess.), June 26, 1979.)

With this in mind, we conclude there is insufficient evidence demonstrating that the land here constituted grasslands within the meaning of section 450, subdivision (b). One witness described the site as a "grassy area" on the sidewalk with "grass," not "just weeds." Another witness described it as the "grassy area" of the sidewalk with "shrubs around." The police officer described the area where the burn marks were as a "line of grass" and called the burn mark areas "burnt grass." The photographic evidence corroborates the witnesses' testimony. Exhibits 2 and 11A through 11E show the strip of vegetation with three burn marks. The burn marks are in areas which appear to be dried or dead grass mixed with weeds. The

evidence, therefore, demonstrates that Quevedo burned grass. The area surrounding the three burn marks was also mainly dried grass and weeds, some shrubs, and trees planted in the middle of the vegetation strip running down the block. Next to the strip of vegetation—moving away from the road—was a paved sidewalk. The mere presence of grass does not make this area a grassland as it was not natural, wild, farmland, prairie land, or grazing land. The area contains none of the other features suggestive of a grassland described by the dictionary definitions and supported by the statutes' context and history. Accordingly, there is insufficient evidence that the area was a grassland.

### 2. Brush Covered Land

*Costella*, *supra*, 11 Cal.App.5th 1, appears to be the only published decision addressing the meaning of "brush covered land" as part of section 450's definition of forest land. Because the Penal Code did not further define brush or brush covered, the *Costella* court looked to the dictionary definitions of those terms. (*Costella*, at p. 6.) "According to Merriam-Webster, the meaning of 'brush' is 'scrub vegetation' or 'land covered with scrub vegetation.' [Citation.] 'Scrub,' in turn, is 'a stunted tree or shrub.' " (*Ibid*.) Additionally, we note that the definitions of "brush" by Dictionary.com include "a dense growth of bushes, shrubs, etc.; scrub; thicket" and "bushes and low trees growing in thick profusion, especially close to the ground." (<https://www.dictionary.com/browse/brush> [as of June 8, 2026].)

In *Costella*, the defendant set fire to a murder victim in a spot alongside a highway. (*Costella*, *supra*, 11 Cal.App.5th at p. 4.) Immediately surrounding the body was an area with bare dirt, grass, weeds, and scattered shrubs. (*Id*. at pp. 4–5, 6.) But aerial photographs depicting a wider view of the area showed that "green vegetation densely covered—and in many places

8

entirely covered—most of the undeveloped plot of land." (*Id.* at p. 6.) Thus, while the defendant had set fire "in a brush scattered clearing," the area was "otherwise brush covered." (*Id.* at p. 7.) The court saw "no requirement that every inch of the subject land be covered by brush." (*Ibid.*)

Based on the definitions and the discussion in *Costella*, we believe the definition of "brush covered land" requires that at least some portion of the land in question be densely populated with brush, even if it is not "continuously covered with brush." (*Costella, supra*, 11 Cal.App.5th at p. 7.) Here, there is insufficient evidence of any dense population of brush. One witness described "some shrubbery" smoldering. Other witnesses described the land as a "grassy area" with "burnt grass." Exhibits 2 and 11A through 11E show the strip of vegetation between the road and the paved sidewalk consisting mostly of dried or dead grass and weeds with some trees. There are some shrubs in a small area of the strip near the burn marks. On the other side of the paved sidewalk is another small strip of vegetation. While the evidence demonstrates that at least some portion of the site was populated with shrubs, that is, brush, there is no evidence demonstrating that any part of the land was densely populated with brush. Accordingly, there is insufficient evidence that the land was "brush covered."

In sum, there is insufficient evidence that the land at issue constituted forest land under sections 450, subdivision (b), and 451, subdivision (c). Therefore, the arson conviction must be reversed.

### III. DISPOSITION

The conviction for arson (count 1) is reversed for insufficient evidence, and the conviction for possession of methamphetamine (count 2) is affirmed. The sentence is vacated, and the matter is remanded to the trial court for a

9

full resentencing of the count 2 conviction.[6]  (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

 

 

 

_____

                                 LANGHORNE WILSON, J.

WE CONCUR:

_____

HUMES, P. J.

_____

SMILEY, J.

*People v. Quevedo / A171294*

---

[6] We express no opinion whether on remand the People could charge Quevedo with arson of property pursuant to section 451, subdivision (d), and retry him on such a charge.  (See § 654; *People v. Goolsby* (2015) 62 Cal.4th 360.)

10