Filed 12/12/22 P. v. Zaragoza CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F082594 |
| Plaintiff and Respondent, | (Super. Ct. No. F20906167) |
| v. | |
| ROBERTO ZARAGOZA, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. John F. Vogt and Michael G. Idiart, Judges.[‡]

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[‡] Judge Vogt was the trial judge and Judge Idiart was the sentencing judge.

**INTRODUCTION**

This case, and the separate but related appeal of appellant Roberto Zaragoza's co-defendant Antoinette Adrianna Duarte, comes to us in a somewhat unusual posture. All parties in both appeals agree the judgments should be reversed. Where they disagree are the grounds for reversal and the remedy.

As we explain below, we agree both defendants' convictions and sentences must be reversed. Because their arson of forest land convictions are not supported by substantial evidence, the trial court shall dismiss the charges and enhancements of which both defendants were convicted and vacate their sentences. Moreover, on remand neither defendant may be retried for the arsons for which they were charged and convicted.

**BACKGROUND**

A jury convicted Zaragoza and co-defendant Duarte on separate counts of arson of forest land. (Pen. Code,[1] § 451, subd. (c).) The jury also found true a special allegation that the offenses were committed during a state of emergency. (§ 454, subd. (a)(2).)[2] Both defendants had separate pending cases and faced bifurcated prior conviction allegations, so their cases were severed for the purpose of bench trials on their priors and, eventually, sentencing hearings that occurred on different dates. As a result, they come before us in separate appeals, which we address separately.[3]

As for Zaragoza, the trial court found two prior conviction allegations true: (1) a second-strike allegation (§§ 667, subds. (b)–(i) and 1170.12, subds. (a)–(d)); and (2) a prior serious felony conviction (§ 667, subd. (a)(1).) Both allegations were based on his

---

[1] All undesignated statutory references are to the Penal Code.

[2] Arson of forest land is normally punishable by two, four, or six years. (§ 451, subd. (c).) Section 454 provides for an alternative sentencing scheme when such an offense is committed during and within an area where the Governor has declared a state of emergency, making it punishable by five, seven, or nine years (§ 454, subds. (a), (b)).

[3] We resolve Duarte's appeal today. (*People v. Duarte* (Dec. 12, 2022, F082851) [nonpub. opn.].)

2.

2002 conviction for possession of a deadly weapon with a criminal street gang enhancement (former §§ 12020, subd. (a), and 186.22, subd. (b)(1)).

The sentencing court imposed a 14-year, eight-month term, comprising a seven-year midterm—doubled to 14 by the strike prior—for arson of forest land during a state of emergency, plus an eight-month consecutive sentence on an unrelated identity theft charge in Fresno County Superior Court case number F18900238, to which Zaragoza pled guilty.[4] The court struck the section 667, subdivision (a) prior.

On appeal, Zaragoza contends the judgment should be reversed because there was insufficient evidence to support an arson conviction under section 451, subdivision (c) insofar as the People failed to prove an arson of forest land.

Alternatively, he claims the judgment should also be reversed because the trial court prejudicially erred by instructing the jury that a violation of section 451, subdivision (c) includes both the arson of "forest land," *and* any other "property," including "land other than forest land," thereby effectively conflating subdivisions (c) and (d) of section 451 into a single hybrid offense.[5] In that instance, he argues the judgment should be reversed and the matter should be remanded for resentencing under the less serious, but uncharged, subdivision (d) of section 451—an offense he concedes is supported by substantial evidence.

---

[4] Zaragoza has not appealed from his identity theft conviction. As a result, our appellate record regarding that case is limited to the abstract of judgment and a partial plea colloquy, which show Zaragoza pled guilty to an identity theft charge (§ 530.5, subd. (a)) and received a subordinate eight-month sentence consecutive to the 14 years imposed in the arson case.

[5] More precisely, arson is the willful and malicious "burning of[] any structure, forest land, or property." (§ 451.) Section 451, subdivision (c) involves "[a]rson of a structure or forest land," and section 451, subdivision (d) refers to "[a]rson of property." In turn, " '[p]roperty' means real property or personal property, *other than* a structure or *forest land.*" (§ 450, subd. (c), italics added.) Subdivisions (a) and (b) of section 451 involve "[a]rson that causes great bodily injury," and arson of "an inhabited structure or inhabited property."

In response, the People maintain substantial evidence supports a conviction under subdivision (c) because "there was sufficient evidence that [the victim's] property fit the definition of forest land." As for the jury instruction claim, the People agree the trial court prejudicially erred in how it instructed the jury on the arson charge. However, they insist the remedy is a reversal and remand *either* for a new trial on the section 451, subdivision (c) charge *or* for a resentencing on a section 451, subdivision (d) offense of arson of land other than forest land.

We agree with Zaragoza that a conviction for section 451, subdivision (c) is not supported by substantial evidence in this case, and therefore his conviction and sentence on that offense and the additional enhancing allegations must be reversed. As such, we need not address the issue of the potential remedies on a reversal and remand for the concededly erroneous jury instruction.[6]

Moreover, because we find legally insufficient evidence to support an arson conviction under section 451, subdivision (c), the People may not retry Zaragoza on that charge. In addition, because a section 451, subdivision (d) offense was never charged in this case, and because the parties waived preliminary hearing, section 1009 forecloses the People from amending the information to include a new section 451, subdivision (d) offense. Similarly, section 654 also bars the People from retrying Zaragoza on any subdivision of section 451. The judgment is therefore reversed with directions.

---

[6] Zaragoza also contends the trial court abused its discretion by rejecting a midtrial plea bargain following the court's denial of the defendants' motions to dismiss for insufficient evidence at the close of the prosecution case. (See § 1118.1.) He urges we should reverse and direct to the trial court to "honor the plea agreement." Similarly, he claims the trial court abused its discretion by denying the prosecutor's motion to dismiss the case after the plea bargain was rejected. In that instance, he contends we must reverse "with instruction [*sic*] to dismiss the charge against appellant." Because we are reversing on other grounds, we need not and do not address these additional claims.

4.

# FACTS

Because there are no real factual disputes, only their legal significance, we need not lay out the facts in great detail. Suffice it to say that Juanita C. rented a house in a central Fresno residential neighborhood with other "residences around it." Her backyard was "weird" because it had a gated wooden fence that "cut [the backyard] like in half" and separated her half of the lot from the other half. The fence was a "standard six-foot Douglas fir picket fence."

On the other side of the fence was a mostly dirt yard and an abandoned, vacant home that looked "like it had been inhabited by squatters." She said this other lot was part of her rental property, although her family did not use it except for Easter-egg hunts and for her children to "ride their little electric dirt bikes." Perpendicular to the backyard fence, her side yard also had a fence that ran the length of both back lots, and on the other side of which ran a parallel residential alleyway. Just over the fence from her yard was a "big almond or pecan tree" under which was a "lot of [] dry brush." She did not explain what she meant by "brush."

One day in September 2020, Juanita C. returned home from the grocery store and saw Duarte and Zaragoza—whom she recognized as "Robert" from prior interactions— standing around a fire that was burning under the tree, and close to the backyard fence. She yelled at the defendants, and at some point they ran away down the alley. She went to get a hose to put out the fire and when she returned, she noticed a second, smaller fire near where Duarte had been kneeling, and which looked like it had just been started.

Juanita C., her husband, and her son opened the gate in the fence between the yards and went into the adjacent yard with buckets of water to put out the fires, both of which were still smoldering when the fire department arrived a few minutes later. The first fire burned a "dry grass" area about 15-by-15 feet, and the second fire, which was about 25 feet from the first fire, burned an area about 5-by-10 feet.

5.

A fire investigator soon found Duarte and Zaragoza at a nearby convenience store. The investigator told Zaragoza that he was investigating a fire, and Zaragoza claimed he lived at the location and "was fixing it up," and that "there could be no fire."

The investigator described the area as a flat "backyard of a – like 99 percent fenced-off area," with "four to six inch really light flashy fuels," and "light grassy weed type fuels" similar to "angel hair pasta" in thinness, that were "irregular[ly]" spaced throughout. He said these types of grassy fuels are very common in backyards, including in the investigator's own yard, and especially when the yard is not "maintained or landscaped."

The area under the tree had "some lea[f] droppings and some light grass" that had burned, and perhaps some "small branches from the tree," but since "the grasses and stuff weren't as prevalent," the fire "limited itself because it ran out of fuel." The investigator also found "three or four other small, like burn areas within that whole backyard." He said he also found evidence that at some point there had been an attempt "to try and mitigate the dry grass," including evidence that "some sort of a disk or mechanical device was used to kind of till in the dirt in that area."

The investigator concluded both fires were incendiary "vegetation fires," were acts of arson, were willful, malicious, and intentionally set, and had not started by natural causes.

On March 4, 2020, the Governor proclaimed a State of Emergency pursuant to Government Code section 8625. It included Fresno County and was in effect in September 2020. The trial court took judicial notice of the Governor's proclamation and entered a copy into evidence.

Neither defendant testified, and no defense evidence was presented.

6.

## DISCUSSION

### I.  Sufficiency of the Evidence: Arson of "Forest Land"

In a first amended information, Zaragoza was charged with a single count of arson of a "structure or forest" located at Juanita C.'s residential address, in violation of section 451, subdivision (c).  Because he was charged only with violating subdivision (c), in order to convict the jury had to find: (1) Zaragoza set fire to or burned either a structure or forest land; and (2) he acted willfully and maliciously.  (§ 451, subd. (c); see CALCRIM No. 1515.)  Since no structure was involved, the dispositive question is whether Zaragoza set fire to or burned "forest land."

#### A.  Standard of Review

Although Zaragoza frames the issue as a challenge to the sufficiency of the evidence, it is more than that because "at the heart of this case lies a question of statutory interpretation—the meaning of forest land—which we consider de novo." (*People v. Costella* (2017) 11 Cal.App.5th 1, 5 (*Costella*); cf. *People v. Prunty* (2015) 62 Cal.4th 59, 71 (*Prunty*) [meaning of the phrase "criminal street gang"].)

Even so, "[t]o the extent we must determine whether there was sufficient evidence of forest land, we consider whether the record ' " 'discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Costella, supra,* 11 Cal.App.5th at p. 5.)  Thus, "[w]e apply a deferential standard of review when evaluating … whether the evidence in this case was sufficient to satisfy" the Legislature's definition of forest land. (*Prunty, supra,* 62 Cal.4th at p. 71.)  In the end, "[t]he only evidentiary question before us is whether the prosecution—consistent with the theory it advanced regarding what constituted [forest land]—presented sufficient proof in this case." (*Prunty, supra,* 62 Cal.4th at p. 85.)

7.

## B. Legal Background

As noted *ante,* section 451 provides: "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." Section 451 criminalizes a single act of arson, and subdivisions (a) through (d) of that section set forth four different ways of committing the offense. (*People v. Shiga* (2019) 34 Cal.App.5th 466, 481 (*Shiga*).) As a result, a defendant cannot be convicted under multiple subdivisions of section 451 based on "a single actus reus" of setting a fire. (*Shiga, supra,* 34 Cal.App.5th at pp. 476–481; see also *People v. Vidana* (2016) 1 Cal.5th 632, 650 [section 954 " 'authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct' "]; *People v. Coyle* (2009) 178 Cal.App.4th 209, 217 [three theories of murder were charged as separate counts; defendant improperly convicted on all three counts for killing one person].)

 "Arson of a structure or *forest land* is a felony punishable by imprisonment in the state prison for two, four, or six years…." (§ 451, subd. (c), italics added.) In contrast, section 451, subdivision (d) deals with arson of "property," which is defined to include land *other than* forest land. Thus, subdivision (c) "applies *only* to a structure []or forest land[] and *not to other kinds of property*." (*People v. Goolsby* (2015) 62 Cal.4th 360, 365 (*Goolsby I*), italics added.) And because Zaragoza was charged, tried, and convicted of violating subdivision (c), our focus is on the term "forest land," and whether the lot behind Juanita C.'s backyard fence was forest land and not some other kind of property.

Although the term forest land is somewhat amorphous, in section 450 the Legislature provided some guidance in determining the meaning of various terms in the arson statutes. For purposes of subdivision (c), " '[f]orest land' means any brush covered land, cut-over land, forest, grasslands, or woods." (§ 450, subd. (b).)

It is indisputable that "forest" and "woods" are inapplicable in this case because Juanita C.'s residential backyard in the middle of the city of Fresno was neither a "forest" nor "woods" under even the most liberal construction of those terms, and the parties do not argue otherwise. The other three possibilities are not quite so straightforward, so we therefore further narrow the scope of inquiry to "brush covered land," "cut-over land," and "grasslands."

"Our primary task in interpreting [section 450] is to determine the lawmakers' intent. [Citation.] We begin with the words of the statute and their usual and ordinary meaning, which would typically be their dictionary definition. [Citations.] Their plain meaning controls, unless the words are ambiguous. [Citation.] 'If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.' " (*Costella, supra,* 11 Cal.App.5th at pp. 5-6.)

## C. Analysis

In her closing arguments to the jury, the prosecutor explained her theory of forest land to the jury with the following ambiguous statement: "The definition for forest land just means any brush-covered land, like the grassland that we have discussed in this case. … This is cut-over grass. It's brush land, that's forest land, so you're good to go on the forest land."[7] Hence, she told the jury the yard behind Juanita C.'s fence was two of the kinds of land included in section 450, subdivision (b)—"brush covered land" and "grasslands"—and one that is not—"cut-over grass." For the sake of argument, we shall presume the prosecutor misspoke, and meant to say "cut-over land." We begin with it.

---

[7] The prosecutor's argument then went further off the rails when she threw the elements of section 451, subdivision (d) into the mix: "Let's say, for whatever reason, you don't feel convinced this is forest land. No problem. Look at the definition of property. That definition includes literally any land that's not forest land. And I think it's very clear, at the very least, that this is land, so you're good to go." And again: "[Y]ou'll also get a definition for property. And the thing is that the definition for property includes any land that's not forest land. So either way, forest land or property, the land is burned, and that's really all there is to that."

9.

### i. "Cut-Over Land"

Because the term is somewhat unusual, we note that "cut-over"— or "cutover"— refers to land, especially timberland, where most of the saleable timber has been cut-down or cleared of trees. (See Merriam-Webster.com <https://www.merriam-webster.com/dictionary/cutover> [as of Dec. 12, 2022]; Dictionary.com <https://www.dictionary.com/browse/cutover> [as of Dec. 12, 2022].) Timberland is defined as "wooded land especially with marketable timber," or "land covered with timber-producing forests," (Merriam-Webster.com <https://www.merriam-webster.com/dictionary/timberland> [as of Dec. 12, 2022]; Dictionary.com <https://www.dictionary.com/browse/timberland> [as of Dec. 12, 2022].)

Whatever the prosecutor may have meant by "cut-over grass," which she never explained, it certainly did not fall within section 450, subdivision (b)'s definition of forest land as "cut-over land." There was no evidence Juanita's C. neighboring backyard had ever been a timberland forest cleared of its trees. The lot contained one standing tree, but there was no evidence any other trees had been cleared from the lot for any reason, commercial or otherwise. Additionally, the backyard lot's location in the middle of the city on the same parcel as an abandoned residential structure suggests it had never been used to grow commercial timber. Zaragoza did not set fire to or burn "cut-over land."

### ii. "Grasslands"

Initially, we note that the mere presence of grass is not sufficient to make an area a grassland for the purposes of sections 450 and 451. The fact that section 451 distinguishes between arson of *forest lands* in subdivision (c), which includes grasslands, and lands *other than forest lands* in subdivision (d), suggests the Legislature intended forest lands to mean something other than merely lands on which grass happens to grow. In other words, had the Legislature intended to specifically punish grass fires of any and all kinds, it is reasonable to conclude it would have drafted the statute differently.

10.

This reading of the statutes is also consistent with the dictionary definitions of grasslands. Merriam-Webster defines a "grassland" as "farmland occupied chiefly by forage plants and especially grasses,"[8] or "land on which the natural dominant plant forms are grasses and forbs,"[9] or "an ecological community in which the characteristic plants are grasses." (<https://www.merriam-webster.com/dictionary/grassland> [as of Dec. 12, 2022].) Dictionary.com states "grassland" is "an area, as a prairie, in which the natural vegetation consists largely of perennial grasses, characteristic of subhumid and semiarid climates," or "land with grass growing on it, especially farmland used for grazing or pasture." (<https://www.dictionary.com/browse/grassland> [as of Dec. 12, 2022].)

These definitions suggest a "grassland" is open country land or prairie, occupied largely by grasses, possibly used for grazing—rather than just any grassy land such as a lawn, a golf course, a cemetery, or even an unkempt backyard as is the case here.

Even assuming the plain meaning of section 450 is ambiguous, the legislative history also supports this more narrow interpretation of "grasslands." Instead of proscribing "arson of forest land," the previous version of the arson statute prohibited the willful and malicious burning of any "growing or standing grain, grass or tree, or *any grass*, forest, woods, timber, brush-covered land, or slashing, cutover land." (Former § 449c; Stats. 1976, ch. 1139, § 203, p. 5119, italics added.) The former arson statutes also prohibited the willful and malicious burning of "hay, corn, wheat, oats, barley or other grain or vegetable product of any kind[.]" (Former § 449a; Stats. 1976, ch. 1139, § 200, p. 5119.) In addition, a person could not willfully and maliciously burn "produce,

---

[8] "Forage" is defined as "food for animals especially when taken by browsing or grazing[.]" (Merriam-Webster.com <https://www.merriam-webster.com/dictionary/forage> [as of Dec. 12, 2022].)

[9] A "forb" is "an herb other than grass." (<https://www.merriam-webster.com/dictionary/forb> [as of Dec. 12, 2022].)

11.

or fruit of any kind, whether sacked, boxed, crated, or not[.]" (Former § 449b; Stats. 1976, ch. 1139, § 201, p. 5119.)

In 1979, Senate Bill No. 116 reorganized and consolidated multiple Penal Code sections relating to different forms of arson into sections 450 and 451 that were substantially similar to the current versions. (Stats. 1979, ch. 145, §§ 6, 8, p. 338.) The amendment from "any grass" to "grasslands" suggests the Legislature intended to narrow the types of grassy areas that qualify under the statute.

In making the changes to the arson statutes, the Legislature sought to make the statutes more consistent, more understandable, and easier to prosecute. (See David A. Roberti, Chairman, Joint Com. for Revision of the Pen. Code, letter to Governor Edmund G. Brown, Jr., June 25, 1979, Sen. Bill No. 116, Ch. 145 (Roberti letter).) The Legislature also made the penalties for different types of arson more commensurate with the kinds of harm they caused. (See Roberti letter.) The author of the 1979 amendments confirmed the Legislature intended to narrow the scope of undeveloped property associated with heightened punishment for arson. The author stated: "In the reorganization [of the arson statutes,] grasslands and forest fires are more *narrowly* defined and are treated the same as arson fires of buildings…." (Roberti letter, italics added.) The former California Department of Forestry (now the California Department of Forestry and Fire Protection) stated the new statutory revisions "would put *wildland arson* on the same basis penalty wise as arson of an unoccupied structure. This recognizes the fact that in many instances a person who sets fire to a wildland area creates a greater threat to life and property than many of the single building unoccupied structures that are the subject of arson." (Cal. Dept. of Forestry, Analysis of Sen. Bill No. 116 (1979 Gen. Sess.) June 26, 1979, italics added.) Thus, "forest lands" were thereafter paired with unoccupied structures in subdivision (c) of section 451.

These considerations reinforce our conclusion that the mere presence of grass, dead or alive, does not make property a "grassland" for the purposes of sections 450 and

12.

451. Here, Juanita C.'s adjoining backyard lot contained dead or dried grass, as did the fire investigator's own backyard, but none of the other features of the lot were at all suggestive of a "grassland" as described by the dictionary definitions and supported by context and history of the statutory term. Thus, the evidence was insufficient to conclude the unkempt lot behind Juanita's C. backyard fence was a "grassland."

### iii. "Brush Covered Land"

The remaining possibility for the lot to qualify as "forest land" was as "brush covered land." *Costella, supra,* appears to be the only published opinion to analyze the meaning of "brush covered land" as found in section 450's forest land definitions. (*Costella, supra*, 11 Cal.App.5th at pp. 5–6.)[10] Because neither brush covered land nor brush were further defined by the Penal Code, *Costella* looked to the dictionary definition of those terms. (*Id.* at p. 6.) "According to Merriam-Webster, the meaning of 'brush' is 'scrub vegetation' or 'land covered with scrub vegetation.' [Citation.] 'Scrub,' in turn, is 'a stunted tree or shrub.' " (*Ibid.*) In addition, we note that Dictionary.com defines "brush" as "a dense growth of bushes, shrubs, etc.; scrub; thicket." (<https://www.dictionary.com/browse/brush> [as of Dec. 12, 2022].) Even so, the *Costella* court found no indication in the statute or legislative history that continuous coverage of dense brush was required for criminal liability. (*Costella,* at p. 7.)

Applying the dictionary definitions of "brush" and "scrub," the *Costella* court found sufficient evidence supported the defendant's conviction in that case. (*Costella, supra*, 11 Cal.App.5th at p. 6.) There, the defendant had set fire to a murder victim on

---

**10** But see *People v. Hooper* (1986) 181 Cal.App.3d 1174, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 198, fn. 7. There, the defendant burned an area "out [in] the desert, [in] an area which sheltered wildlife and which was covered with sagebrush, yucca trees, cactus and grass." (*Id.* at p. 1176.) However, because it was not an issue in the case, without any analysis or discussion the court summarily concluded the description of the "property which was burned shows it is within the statutory definition of forest land." (*Id.* at p. 1181.)

the side of a highway in a place with bare dirt and grass. (*Id.* at p. 4.) "Shrubs appear[ed] scattered throughout the area. But this was only the immediate area around the body. The aerial photograph of the scene … show[ed] green vegetation densely covered—and in many places entirely covered—most of the undeveloped plot of land." (*Id.* at p. 6.) "Far from a dirt lot … th[e] area was filled with vegetation." (*Ibid.*) But because there was no requirement of continuous coverage of the scrub brush, the court concluded sufficient evidence supported that defendant had committed arson of brush covered land, and therefore, of forest land. (*Id.* at pp. 6-7.)

The People argue *Costella* is on point and that Juanita C.'s adjoining backyard was "brush-covered" land. We find *Costella* factually distinguishable.

First, based on our review of the definitions of "brush" and the discussion in *Costella*, we conclude the definition of "brush covered land" requires that at least *some* portion of the land in question be populated with brush, even if it is not "continuously covered with brush." (*Costella, supra*, 11 Cal.App.5th at p. 7.)

Second, the lot here was not an undeveloped plot of land. It was mainly dirt, dried grass, and had a single almond or pecan tree. According to the fire investigator, who described the lot in the greatest detail, it consisted of short grass, with low-growth weeds, some taller grass, and the tree. No evidence suggests any part of the lot was filled with dense vegetation, bushes or shrubs. Significantly, there is no evidence that the vacant lot/yard on the other side of Juanita C.'s backyard fence contained *any* "scrub vegetation," let alone that it was "land covered with scrub vegetation." Indeed, there is no evidence of even a single "stunted tree or shrub." (*Costella, supra,* 11 Cal.App.5th at p. 6.) Thus, the evidence was not sufficient to demonstrate the two fires set behind Juanita's backyard fence were in brush covered land, and Zaragoza therefore did not set fire to or burn "brush covered land," within the meaning of section 450.

14.

**D. Conclusion**

We review for substantial evidence. Under this standard, our power " 'begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination[.]' " (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681, italics omitted.) Even so, "substantial evidence does not mean any evidence, no matter how slight." (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1247.) Rather, it is "evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149.) In this case, it is lacking. The evidence failed to show the property on the other side of Juanita C.'s fence to which Zaragoza set fire qualified under any possible meaning of section 451, subdivision (c)'s "forest land" as that term is defined in section 450, subdivision (b). Zaragoza's conviction for that offense must therefore be reversed.

**II. Modification of the Judgment**

As noted above, the trial court, the prosecutor, and both defense counsel acquiesced in a flawed jury instruction that conflated section 451's subdivisions (c) and (d) into a non-existent hybrid arson offense that included both forest land and land other than forest land, i.e., *all* land. On appeal, the parties agree that the evidence would have supported a conviction for violating section 451, subdivision (d), because substantial evidence shows Zaragoza and Duarte each burned or set fire to "property," which includes "land other than forest land."[11] Thus, no one disputes that Zaragoza *could* have properly been convicted under the definition of subdivision (d)'s "property" as "land

---

[11] At the close of the People's case, Duarte's trial counsel made a section 1118.1 motion to dismiss, stating the prosecutor had filed "the wrong Penal Code section," stating the burning here "looked like more like…grass in nature," but did not "qualif[y] as grass land." As it turns out, he was correct.

15.

other than forest land." The problem, of course, is that he was never charged with or convicted of violating subdivision (d).**[12]**

Nonetheless, under the circumstances the question arises whether we may modify the judgment in this case to a conviction of arson of "property" as "land other than forest land" under section 451, subdivision (d). We cannot.**[13]**

Our authority to reduce a conviction to a lesser offense is based on section 1181, subdivision (6), which states that "if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial …." (§ 1181, subd. (6).) Similarly, section 1260 "empowers the appellate court to 'reverse, affirm, or modify a judgment…, or reduce the degree of the offense or attempted offense or the punishment imposed….' Thus, an appellate court is not restricted to the remedies of affirming or reversing a judgment of conviction. Where the reversible error goes only to the issue of whether the greater offense may stand, the appellate court may reduce the conviction to the lesser offense and affirm the judgment as modified, thereby averting the necessity for a retrial." (*People v. Jerome* (1984) 160 Cal.App.3d 1087, 1097, fn. 6.)

---

**[12]** Nor, as we discuss *post*, was Zaragoza given a preliminary examination on that charge, and because the defendant and the People waived preliminary hearing, the People are bound by the subdivision (c) charge they alleged in the original complaint.

**[13]** The People cryptically argue "there is no prejudice as to allowing a conviction of section 451, subdivision (d)," because "[b]ased on the evidence presented at trial, the People proved beyond a reasonable doubt that [Zaragoza] started a fire on the victim's property …." It is unclear what the People mean by us "*allowing*" a conviction, and they provide no authority in support, so we deem the argument waived. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363–364 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, ' "the court may treat it as waived, and pass it without consideration." ' "]; see also Cal. Rules of Court, rule 8.883(a)(1)(A) [briefs must support "each point by argument and, if possible, by citation of authority"].)

16.

First, as reflected by the statutory language, our authority to modify a judgment of conviction to reflect a lesser included offense is permissive, not mandatory. (*People v. Hamilton* (2018) 30 Cal.App.5th 673, 685 (*Hamilton*).) Second, under section 1260 we are only authorized to reduce a conviction to a lesser *included* offense, and not a lesser *related* offense. (*Hamilton, supra,* 30 Cal.App.5th at p. 685; *People v. Lagunas* (1994) 8 Cal.4th 1030, 1034, 1039–1040; *People v. Goolsby* (2016) 244 Cal.App.4th 1220, 1227 (*Goolsby II*); compare *People v. Vang* (2016) 1 Cal.App.5th 377, 387–388 [arson of an inhabited structure under section 451, subdivision (b) could be modified to a violation of the lesser included offense of arson of a structure under subdivision (c) when the "inhabitant" was dead at the time of the arson]; *People v. Muszynski* (2002) 100 Cal.App.4th 672, 684 [reducing conviction for aggravated arson damaging five or more inhabited structures (§ 451.5, subd. (a)(3)) to simple arson causing great bodily injury (§ 451, subd. (a))].)

However, section 451, subdivision (d) is not a lesser included offense as it relates to subdivision (c). (See *Goolsby I, supra,* 62 Cal.4th at p. 362 [arson of property under subd. (d) is a lesser *related* offense of subd. (b) (arson of an inhabited structure or inhabited property) but is not a lesser *included* offense].) More importantly here, the definition of "property" specifically excludes "forest land." (§ 450, subd. (b).) As a result, the statutory definitions of "forest land" and "property" are "mutually exclusive." (*Goolsby II, supra,* 244 Cal.App.4th at p. 1227.)

Sections 1181, subdivision (6) and 1260 do not apply in this case, and therefore we may not modify a judgment of conviction under section 451, subdivision (c) to one of violating section 451, subdivision (d), even if the latter was amply supported by substantial evidence.

## III. Double Jeopardy and Retrial

"[W]hen a reversal rests upon the ground that the prosecution has failed to produce sufficient evidence …, the Double Jeopardy Clause bars the prosecutor from

making a second attempt at conviction." (*Tibbs v. Florida* (1982) 457 U.S. 31, 42; see *People v. Anderson* (2009) 47 Cal.4th 92, 104 (*Anderson*) ["The same is true when a conviction is reversed or set aside because of insufficient evidence."])[14] The rule barring retrial is "confined to cases where the prosecution's failure is clear." (*Burks v. United States* (1978) 437 U.S. 1, 17, 18 (*Burks*).) This is such a case. Therefore, the People may not retry Zaragoza on an arson charge under section 451, subdivision (c). (See also *People v. Shirley* (1982) 31 Cal.3d 18, 71, superseded by statute on other grounds, as explained in *People v. Alexander* (2010) 49 Cal.4th 846, 879.)

Nevertheless, double jeopardy principles do not bar further prosecution for a lesser *related* offense, because that would not be the "same offense" for double jeopardy purposes. (*United States v. Dixon* (1993) 509 U.S. 688, 696–697, 704; *Burks, supra,* 437 U.S. at p. 16 [a reversal based on insufficiency of the evidence bars any further prosecution for the *same offense*]; *Goolsby II, supra,* 244 Cal.App.4th at p. 1226, fn. 2.)

"Although some differences in application arise, both federal and California law generally treat greater and lesser *included* offenses as the 'same offense' for purposes of double jeopardy." (*Anderson, supra,* 47 Cal.4th at p. 104, italics added; see *Brown v. Ohio* (1977) 432 U.S. 161, 168 ["The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it."]; *People v. Scott* (2000) 83 Cal.App.4th 784, 796 (*Scott*) ["The key term in the double jeopardy context is 'necessarily included.' "].) Even though double jeopardy principles preclude a retrial for the arson of forest land charge, here the evidentiary insufficiency went only to the nature of the property burned, not to the fact Zaragoza committed a related arson of property.

---

[14] The Double Jeopardy Clause of the federal constitution's Fifth Amendment applies to the states via the Fourteenth Amendment. (*Benton v. Maryland* (1969) 395 U.S. 784, 794.)

18.

Thus, there would be no *constitutional* impediment to a trial on remand on a charge of violating section 451, subdivision (d).[15]

However, there are other factors here that prevent the People from adding a new count and retrying Zaragoza on a lesser related section 451, subdivision (d) charge.

First, the parties waived preliminary examination in Zaragoza's case, and the People may not amend an information to add a count that was not included in the original felony complaint. (*People v. Peyton* (2009) 176 Cal.App.4th 642, 653 (*Peyton*); *People v. Winters* (1990) 221 Cal.App.3d 997, 1008–1009 (*Winters*); see § 1009 [an information may not be amended "so as to charge an offense not shown by the evidence taken at the preliminary examination"].) The complaint in this matter charged Zaragoza with only a single count: violating section 451, subdivision (c). A new amended charge of violating subdivision (d) is therefore barred under section 1009. (*Peyton, supra,* 176 Cal.App.4th at p. 656 ["allowing such an additional charge violates section 1009"]; *Winters, supra,* 221 Cal.App.3d at pp. 1006-1007.)

Second, section 654 also bars the People from adding a new count of section 451, subdivision (d) and retrying Zaragoza on it. " 'Section 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule

---

[15] Nor do California's separate double jeopardy protections prohibit a retrial on a lesser related offense. Section 1023 provides: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the *offense charged* in such accusatory pleading, or for an attempt to commit the same, or for an offense *necessarily included therein*, of which he might have been convicted under that accusatory pleading." (§ 1023, italics added.) Section 1023 "implements the protections of the state constitutional prohibition against double jeopardy…." (*Anderson, supra,* 47 Cal.4th at p. 93; see Cal. Const., art I, § 15 ["Persons may not twice be put in jeopardy for the *same offense*…." (Italics added.)].) But as we have discussed, section 451, subdivision (d) is not a lesser included offense of subdivision (c). (*Goolsby I, supra,* 62 Cal.4th at p. 362; *Scott, supra,* 83 Cal.App.4th at p. 796 [§ 1023 does not affect lesser related offenses].) Moreover, the only "offense charged" in the accusatory pleading was a violation of section 451, subdivision (c).

against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed ….' " (*Kellett v. Superior Court* (1966) 63 Cal.2d 822, 825 (*Kellett*).)[16]

*Kellett* involved a defendant arrested for the single act of standing on the sidewalk with a pistol in his hand. He was charged with and pled guilty to a misdemeanor charge of brandishing a firearm in a threatening manner but was later separately prosecuted for felony possession of a concealable weapon. The Supreme Court held that the second prosecution was barred by section 654, even notwithstanding the possibility the defendant had possessed the firearm for some time before he was observed brandishing it. (See *Kellett, supra*, 63 Cal.2d at pp. 824–825.) The offenses were too "interrelated," in other words, to permit separate prosecutions. (See *id.* at p. 827.)

The Supreme Court concluded: "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited, or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra,* 63 Cal.2d at p. 827.)

Instructive is a case quite similar to the case before us. In *Goolsby I, supra*, a jury convicted the defendant of violating section 451, subdivision (b), which proscribes arson of "an inhabited structure or inhabited property." Because of the way the case was originally charged, the Court of Appeal had found the evidence insufficient to sustain the

---

[16] Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or *conviction and sentence under any one bars a prosecution for the same act or omission under any other*." (§ 654, subd. (a), italics added.)

conviction, which like here precluded retrial of that charge.[17] (*Goolsby I, supra,* 62 Cal.4th at p. 362.) However, the Supreme Court rejected the defendant's *Kellett* claim that the prosecution was also barred from retrying him on the less serious arson of property charge under section 451, subdivision (d). (*Goolsby I, supra,* 62 Cal.4th at p. 365.)

Although the prosecution in that case did not directly charge the defendant with arson of property under subdivision (d), the trial court specifically instructed the jury on that separate offense, and "erroneously believing that arson of property is a lesser *included* offense of the charged crime, the court instructed the jury to reach a verdict on that offense only if it acquitted defendant of the greater offense." (*Goolsby I, supra,* 62 Cal.4th at p. 362, original italics.) And because the jury convicted on the greater offense, "the jury did not reach a verdict on the arson of property charge." (*Ibid.*) As such, the Supreme Court concluded that "under these circumstances, the lesser offense of arson of property *was* prosecuted in a single proceeding along with the section 451, subdivision (b), charge and, accordingly, that section 654 does not prohibit retrying defendant for that lesser offense." (*Id.* at p. 363.) In other words, the subdivision (d) offense had, as the dissenting opinion below had phrased it, been " 'effectively charge[d].' " (*Id.* at p. 367.)

Important here, the Supreme Court further observed that "[i]f the trial court had not instructed the jury on arson of property, we have no doubt that *Kellett* [citation], would prohibit charging that crime for the first time now …. [A]lthough the charging documents never charged this crime, the court did instruct the jury on it at trial."

---

[17] Analogous to the case before us, there the Court of Appeal had found that a "motor home was not a 'structure' under the arson statute but instead [was] 'property,' and, for this reason, the evidence was insufficient to support the jury's verdict finding defendant guilty of arson of an inhabited structure." (*Goolsby I, supra,* 62 Cal.4th at p. 364.)

(*Goolsby I, supra,* 62 Cal.4th at p. 366.) Thus, unlike here, in *Goolsby I* the jury was instructed on section 451, subdivision (d) as a *separate* lesser included offense, and hence that offense "was 'prosecuted in a single proceeding' along with the other crimes," within the meaning section 654. (*Goolsby I, supra,* 62 Cal.4th at p. 366, quoting *Kellett, supra,* 63 Cal.2d at p. 827.) " ' "There is no difference in principle between adding a new offense at trial by amending the information and adding the same charge by verdict forms and jury instructions." [Citation.] … *Kellett* precludes a trial on an offense only when the prosecution has *failed to charge* that offense in a previous proceeding. Here, defendant *was charged* with arson of property. Moreover, because the jury never returned a verdict on the lesser [charge] (for whatever reason), this charge is still "unresolved" and "pending." ' " (*Goolsby I, supra,* 62 Cal.4th at p. 367.)

Here, in contrast, the jury was never given instructions on a section 451, subdivision (d) arson of property offense at all, let alone as a lesser included offense. Indeed, the way the flawed jury instruction on section 451, subdivision (c) was worded in this case, subdivision (d) vanished and became merely an alternative way of violating subdivision (c). When conjoined with the prosecutor's misstatements as to these additional alternative "elements" of arson under subdivision (c), the jury was never instructed on the *offense* of arson of property under subdivision (d). Therefore, *Goolsby I* is factually inapposite, and *Kellett* "prohibit[s] charging that crime for the first time now." (*Goolsby I, supra,* 62 Cal.4th at p. 366.) Section 654's bar on successive prosecutions applies following both a straight acquittal or its equivalent: a reversal for insufficient evidence. Therefore, section 1009 notwithstanding, section 654 also precludes the People from retrying Zaragoza on an amended section 451, subdivision (d) charge.

## DISPOSITION

The judgment is reversed. The conviction and sentence on the arson charge are vacated and the matter is remanded to the trial court for further proceedings consistent

with this opinion.  The People may not retry Zaragoza for the arson.  The trial court is directed to vacate the eight-month consecutive sentence imposed on the subordinate identity theft conviction from Fresno County Superior Court case number F18900238 and resentence Zaragoza on that case.  After resentencing, an amended abstract of judgment shall be prepared and served on the Department of Corrections and Rehabilitation.


SNAUFFER, J.

WE CONCUR:


DETJEN, ACTING P. J.


PEÑA, J.