Filed 10/4/24  P. v. Gonzalez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICENTE GARCIA GONZALEZ,<br><br>    Defendant and Appellant. | G063481<br><br>(Super. Ct. No. INF1901843)<br><br>ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on September 20, 2024, be modified as follows:

On page 3, first line, replace "count 2" with "count 1" so that it reads, "on count 1 to reflect a conviction for the lesser included offense of violation of Penal Code section 288, subdivision (a) and remand for resentencing."

There is no change in the judgment.


SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MOTOIKE, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICENTE GARCIA GONZALEZ,<br><br>    Defendant and Appellant. | G063481<br><br>(Super. Ct. No. INF1901843)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Dean Benjamini, Judge.  Affirmed in part, modified in part, and remanded with directions.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Vicente Garcia Gonzalez of six counts (counts 1-6) of committing forcible lewd acts on a child under 14 years of age in violation of Penal Code section 288, subdivision (b)(1) (section 288(b)(1)) and one count (count 7) of committing a lewd act on a child who was 14 or 15 years of age and was more than 10 years younger than he, in violation of Penal Code section 288, subdivision. (c)(1). The victim in each count was Jane Doe, who was born in 2005. The trial court sentenced Gonzalez to a total prison sentence of 30 years 8 months.

Gonzalez challenges his conviction on three grounds: (1) the prosecutor committed error during closing argument;[1] (2) the evidence was insufficient to prove he committed the crimes charged in counts 1 through 6 by means of force or duress; (3) the evidence was insufficient to prove Jane Doe was eight and nine years old, respectively, when he committed the acts alleged in counts 1 and 2. In addition, Gonzalez argues the court operations assessment and criminal conviction assessment must be stricken from the judgment because the trial court did not orally impose them at sentencing.

We affirm with a modification and a limited remand. As we shall explain, the prosecutor did not commit error. The record has sufficient evidence that Gonzalez used force to commit the acts alleged in counts 2 through 6, but insufficient evidence that Gonzalez used force or duress to commit the acts alleged in count 1. As a consequence, we modify the verdict

---

[1] We use the term prosecutorial error rather than prosecutorial misconduct because prosecutorial misconduct "'is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.) "'A more apt description of the transgression is prosecutorial error.'" (*Id.* at p. 667.)

on count 2 to reflect a conviction for the lesser included offense of violation of Penal Code section 288, subdivision (a) and remand for resentencing. The record has sufficient evidence that Jane Doe was eight years old when Gonzalez committed the acts alleged in count 1 and nine years old when Gonzalez committed the acts alleged in 2. Finally, we strike the court operations assessment and criminal conviction assessment and remand for the court to orally impose those assessments and provide Gonzalez the opportunity to object to them.

## FACTS

Jane Doe was born in 2005. She grew up in a home with her younger brother and their mother (Mother). When Jane Doe was about five years old, Gonzalez, who was Mother's boyfriend, moved into their home. Although Gonzalez is not the biological father of Jane Doe or her younger brother, she viewed Gonzalez as her stepfather or a "second father."

Gonzalez and Mother slept in the main bedroom, and Jane Doe and her younger brother slept in the same bed in the other bedroom. Gonzalez worked evening hours at his job and typically arrived home from work around 1:00 a.m.

Gonzalez started molesting Jane Doe when she was seven or eight years old. Gonzalez would enter Jane Doe's bedroom after coming home from work and touch her chest, buttocks, vagina, and "every part of her body" while she laid in bed. He did this on a daily basis. When Gonzalez started molesting Jane Doe, she was so young she believed it was a "monster," not Gonzalez, who was touching her. After she turned nine years old, she realized it was Gonzalez who had been touching her because she saw his face.

Once Jane Doe understood what Gonzalez was doing to her, she started to "fight back" by moving around in bed and covering herself, kicking her legs, pushing him away, or screaming. When Jane Doe pushed Gonzalez away, he would stop touching her, but then would "come back." Kicking would make Gonzalez stop, but moving around in bed would only cause him to pause. When Jane Doe would ask Gonzalez to "[l]eave [her] alone," he would stay quiet. Despite Jane Doe's efforts to make Gonzalez stop touching her, he continued to molest her.

Jane Doe was scared every time Gonzalez touched her. She felt as though she were trapped in a hole and did not know what to do. She did not tell anyone about what Gonzalez was doing because she did not think anyone would believe her. She did not know to whom to turn. Jane Doe felt "alone in this world" and "trapped" and wanted to "just give up [her] life."

Gonzalez continued to molest Jane Doe on a regular basis until she was 14 years old. The day before he went to jail, he gave Jane Doe a letter in which he apologized to her for touching her. On the day Gonzalez gave Jane Doe the letter, he spoke with her and asked her to forgive him for touching her. He asked her not to tell anyone about his actions because he was providing for the family. Gonzalez then told Mother that he had been inappropriately touching Jane Doe. Mother went to Jane Doe and asked her to tell her the truth about what Gonzalez had done. Jane Doe confirmed that Gonzalez had been molesting her. Mother was in shock and immediately called the police.

A police officer arrived later that afternoon. Mother told the officer Gonzalez had molested Jane Doe. That evening, Gonzalez drove himself to the police station, where he was interviewed. During the interview, which was video recorded, Gonzalez admitted he had repeatedly

4

touched Jane Doe's vagina over her clothing, at night, beginning when she was 10 years old and ending about two months before the interview. Gonzalez said he would sometimes move Jane Doe's hand away to touch her and that Jane Doe would move him away or kick him. He acknowledged he had given Jane Doe a letter asking her to forgive him for what he had done to her and to not tell anyone.

A few days later, Jane Doe was forensically interviewed at a children's center. During the interview, which was video recorded, Jane Doe said that Gonzalez had "touched" or "grab[bed]" her "boobs," "butt," and vagina, over her clothes, at night, starting when she was about seven or eight years old and continuing until about a month before the interview. She said she thought it was a "creature" touching her at night until she was around 12 years old and saw Gonzalez's face. Jane Doe said that while in middle school, she understood what Gonzalez was doing, she began to move around in the bed and cover herself to try to stop Gonzalez from touching her. Gonzalez would uncover Jane Done and resume touching her.

Gonzalez was arrested after Jane Doe's interview. During another video recorded interview, Gonzalez estimated he had touched Jane Doe's vagina at least 150 times, and her breasts "maybe" once over her clothes, during a long period of time, starting when she was nine or 10 years old. Gonzalez said it "felt good" to touch Jane Doe. Gonzalez said he had asked Jane Doe to forgive him. Although Gonzalez had told Jane Doe she had "the will" to decide for herself whether to tell anyone, he also told her that if she did tell anyone, he would go to jail for many years and her younger siblings "needed us."

## DISCUSSION

### I.

### THE PROSECUTOR DID NOT COMMIT ERROR

Gonzalez argues the judgment should be reversed due to statements made by the prosecutor during closing and rebuttal arguments which, Gonzalez contends, constitute prosecutorial error. We note at the outset Gonzalez's trial counsel did not object to any of the prosecutor's statements claimed to be erroneous or request the court to admonish the jury. (*People v. Navarro* (2021) 12 Cal.5th 285, 332.) His claim of prosecutorial error is therefore deemed forfeited and reviewable only by means of a claim for ineffective assistance of counsel. (*People v. Centeno, supra*, 60 Cal.4th at p. 674.) We address that claim nonetheless and conclude the prosecutor did not commit error.

A prosecutor's conduct violates the federal Constitution when the conduct "'infects the trial with such unfairness as to make the conviction a denial of due process'"; that is, when the conduct is "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" (*People v. Harrison* (2005) 35 Cal.4th 208, 242.) A prosecutor's argument that does not render a criminal trial fundamentally unfair violates California law only if the conduct involves "'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'" (*Ibid.*)

Gonzalez argues the prosecutor committed error in two respects. First, Gonzalez argues, the prosecutor committed error by referring to him as a monster. At the start of the prosecutor's closing argument, the prosecutor argued: "This is the age where she's supposed to feel safe going to sleep, the age where her mother and her stepfather are protecting her and her siblings. But instead of that, there was *a monster* in the house—the defendant. And

6

when (Jane Doe) was this old, the defendant began coming into her room at night." (Italics added.) At the end of the prosecutor's closing argument, the prosecutor argued: "Ladies and gentlemen, the evidence in this case is overwhelming. Through (Jane Doe)'s testimony of that dominance, *the monster* that was touching her every night. Her testimony of how afraid she was, how scared she was, how trapped she felt. That's the duress." (Italics added.) During rebuttal, the prosecutor stated: "The only reasonable conclusion you can draw from the evidence you received during this trial is that the defendant is guilty of the 288(b)(1)'s in Count 1 through 6. And I ask that you hold (*Jane Doe*)*'s monster* guilty of all seven counts." (Italics added.)

"Prosecutors 'are allowed a wide range of descriptive comment and the use of epithets which are reasonably warranted by the evidence' [citation], as long as the comments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury [citation]." (*People v. Farnam* (2002) 28 Cal.4th 107, 168.)

Referring to Gonzalez as a "monster" and "(Jane Doe)'s monster" was warranted by the evidence. Jane Doe testified that when Gonzalez started molesting her, she was so young that she believed it was a "monster" who was coming into her bedroom at night and touching her. When she was nine years old, Jane Doe realized it was Gonzalez, and not the imagined monster, who was touching her. During her forensic interview, Jane Doe said she thought a "creature" was touching her at night. The prosecutor permissibly relied on Jane Doe's testimony to make the point that Gonzalez was in fact the monster who Jane Doe believed was molesting her.

The second respect in which Gonzalez argues the prosecutor committed error was by misstating the law as to the amount of force necessary for a conviction under section 288(b)(1).  In rebuttal, the prosecutor argued:  "That's the only force necessary—is putting your hand out and rubbing the private area that you want to touch.  *That's the only force that's required*."  (Italics added.)  Gonzalez contends that argument misstates the requirement of section 288(b)(1) that the prosecution must prove that a defendant used force that was substantially different from or substantially greater than the physical force normally inherent in the sexual act committed.  (See *People v. Soto* (2011) 51 Cal.4th 229, 242.)

Viewed in isolation, the prosecutor's argument appears to misstate the law.  But to find prosecutorial error, we must view the challenged statement in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner.  (*People v. Cortez* (2016) 63 Cal.4th 101, 130-131 (*Cortez*).)  "If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.'"  (*Id*. at p. 130.)

Just before making the challenged statement, the prosecutor correctly told the jury, "Now we also heard a little bit about force, right, and the law states that it has to be substantially different or substantially greater, right."  After making the challenged statement, the prosecutor argued:  "Pulling the sheet down, that's substantially different.  It doesn't involve touching her body.  It involves exposing that part of the body.  Substantially different.  Also, substantially greater, because that requires to take both hands, pull the sheet down, and then do what you're going to do.

That goes for pulling the sheets down, stopping her from kicking, moving the hand away from her vagina when she's attempting to protect herself." The prosecutor thereby clarified that convictions were being sought under section 288(b)(1) based on evidence of force that was different from or greater than the physical force inherent in the sexual acts committed against Jane Doe.[2]

In addition, the jury was instructed with CALCRIM No. 1111 that the amount of force must be "substantially different from or substantially greater than the force needed to accomplish the act itself." We presume the jury followed the court's instructions, rather than any conflicting comments by counsel, in reaching a verdict. (*Cortez, supra*, 63 Cal.4th at p. 131.) There was no reasonable likelihood the challenged part of the prosecutor's argument, when viewed in context of the entire argument and the jury instructions, would have been understood by the jury in an improper or erroneous manner.

## II.

### THERE IS SUBSTANTIAL EVIDENCE OF FORCE ON COUNTS 2 THROUGH 6 BUT INSUFFICIENT EVIDENCE OF FORCE OR DURESS ON COUNT 1

Gonzalez argues his convictions under counts 1 through 6 must be reversed because the evidence was insufficient to support a finding he used force, violence, duress, menace, or fear to commit the lewd acts against Jane Doe. As to counts 2 through 6, we conclude there is sufficient evidence of force, but as to count 1 there is not sufficient evidence of force or duress.

---

[2] In his reply brief, Gonzales suggests the prosecutor misstated the law because the actions described by the prosecutor do not constitute force sufficient for a conviction under section 288(b)(1). The prosecutor was not making a statement of law but addressing the evidence. Further, in part III of the Discussion section, we conclude those actions are sufficient.

A. *Relevant Law and Standard of Review*

Section 288(b)(1) makes punishable the commission of lewd or lascivious acts against a child under the age of 14 that are committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." Force under section 288(b)(1) means physical force that is "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.'" (*People v. Soto, supra*, 51 Cal.4th at p. 242.) "'[A]n act is forcible if force facilitated the act rather than being merely incidental to the act.'" (*People v. Morales* (2018) 29 Cal.App.5th 471, 480.) "'[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves' are sufficient to support a finding that the lewd act was committed by means of force." (*Ibid.*)

"Where, as here, a defendant challenges the sufficiency of the evidence on appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Hubbard* (2016) 63 Cal.4th 378, 392.) "[I]t is the jury, not the reviewing court, that must weigh the evidence, resolve conflicting inferences, and determine whether the prosecution established guilt beyond a reasonable doubt." (*Ibid.*)

B. *Counts 2 through 6: Sufficient Evidence of Force*

As to counts 2 through 6, Jane Doe testified that, when Gonzalez touched her, she would fight back by pushing him away. Although Gonzalez would leave, she testified that "he would come back." Jane Doe testified she would move around in bed to get Gonzalez to stop and that would only cause

10

him to pause. Jane Doe could not stop Gonzalez from touching her. During his police interview, Gonzalez said that Jane Doe would move away from him and kick him and he would move her hand away so that he could touch her.

Gonzalez argues that moving about, kicking, and screaming did not constitute force inflicted by him to accomplish the touching because he would stop when she did those things. Jane Doe testified that moving about in bed would only cause Gonzalez to pause, not to stop, and the jury could consider Jane Doe's resistance by kicking and screaming in assessing whether Gonzalez used force to accomplish the lewd acts. (*People v. Babcock* (1993) 14 Cal.App.4th 383, 387.) From the testimony that Jane Doe had to kick Gonzalez or scream to make him stop, a reasonable juror could conclude that Gonzalez used force. (See *People v. Jimenez* (2019) 35 Cal.App.5th 373, 393 (*Jimenez*).)

*Jimenez* is analogous. In *Jimenez*, the victim was asked at trial what she did physically to try to make the defendant stop molesting her. (*Jimenez, supra*, 35 Cal.App.5th at p. 393.) She answered, "'[B]*y pushing him away*.'" When asked if that made the defendant stop, the victim answered: "'Yes. And then *he would try again and try again*.'" (*Ibid*.) The defendant challenged his conviction for violating section 288(b)(1) on the ground that the evidence was insufficient to prove he used force against the victim. (*Jimenez,* at p. 392.) The Court of Appeal concluded the evidence of force was sufficient because "[t]he jury could infer from this that [the defendant] used physical force to overcome [the victim]'s attempts to push him away." (*Ibid*.)

Likewise, here Jane Doe testified that when she pushed Gonzalez away, "he would come back" and that moving around in bed would only cause him to pause. In addition, Gonzalez said during his police interview that he

11

would move Jane Doe's hand, which facilitated the commission of the lewd act.

C. *Count 1: Insufficient Evidence of Force or Duress*

The Attorney General acknowledges the evidence of force does not include count 1, which covered the time period when Jane Doe was eight years old, because Jane Doe did not begin to resist Gonzalez until she was nine years old. The Attorney General argues as to count 1 that Gonzalez committed the lewd acts by use of duress.

For purposes of section 288(b)(1) "duress" means "'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.'" (*People v. Leal* (2004) 33 Cal.4th 999, 1004.)

The jury determines duress by considering the totality of the circumstances. (*People v. Veale* (2008) 160 Cal.App.4th 40, 46 (*Veale*).) Relevant factors include the victim's age, the victim's relationship to the defendant, threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revelation of the molestation would place the family in jeopardy. (*Ibid.*)

Of those factors, only Jane Doe's relative age, relationship, and size to Gonzalez are present as to count 1. Jane Doe was eight years old, Gonzalez was her stepfather and 44 to 45 years old. Jane Doe was much smaller in size than Gonzalez. No other factors were present. Gonzalez did ask Jane Doe at one point not to tell anyone about what he had done for fear he would go to prison, but that was years after the time period alleged in

12

count 1.  The Attorney General cites to Jane Doe's testimony of fear and not wanting to tell anyone because she thought she would not be believed.  But "duress is measured by a purely objective standard" and focuses on the defendant's actions, not the victim's response.  (*People v. Soto, supra*, 51 Cal.4th at p. 246.)

The Attorney General argues age, size differential, and relationship between Gonzalez and Jane Doe are sufficient evidence of duress.  In support of that argument, the Attorney General points to cases stating:  "The fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress.  [Citation.]  When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases."  (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072-1073 (*Thomas*), citing *Veale, supra*, 160 Cal.App.4th at p. 49, citing *People v. Cochran* (2002) 103 Cal.App.4th 8, 16, fn. 6 (*Cochran*).)

But more was present in *Thomas*, *Veale*, and *Cochran* than age, size, and relationship.  In *Thomas*, the victim was compelled to engage in sex acts "in response to parental authority and violent intimidation," and the court concluded the jury could have found the defendant's "continual beatings constituted an implied threat of violence . . . ."  (*Thomas, supra*, 15 Cal.App.5th at p. 1073.)  In *Veale, supra*, 160 Cal.App.4th 40, the court found "the evidence is sufficient to support a finding of duress, based on [the victim's] age and size; her relationship to [the] defendant; and her testimony that she feared [the] defendant and feared he would harm or kill her or [her] mother if she told anyone [the] defendant was molesting her."  (*Id.* at pp. 48-49.)

In *Cochran*, the victim was nine years old and resided with the defendant, who was her father.  The victim was four feet three inches tall and

13

the defendant was five feet nine inches tall and outweighed her by about 100 pounds. (*Cochran, supra*, 103 Cal.App.4th at p. 15.) A video recording showed the victim reluctantly engaging in sexual conduct with the defendant only when he directed and coached her. (*Ibid*.) The defendant discounted the victim's concern about her mother returning home. (*Ibid*.) The victim testified that when she was mad or sad about what the defendant was doing to her, he gave her money or gifts and, when they were alone together, he told her not to tell anyone because he would get in trouble and could go to jail. (*Ibid*.)

No evidence was presented at trial that during the time period alleged in count 1 Gonzalez intimidated Jane Doe or made any express or implied threats to her, or that Jane Doe made any oral or physical response to his lewd acts. Although Gonzalez was Jane Doe's stepfather, she believed it was monster who was touching her and only later, after the time period alleged in count 1, did she realize it was Gonzalez.

The Attorney General invites us to modify the verdict to reflect a conviction for the lesser included offense of violating Penal Code section 288, subdivision (a)[3] in the event we conclude the evidence was insufficient to support a conviction under section 288(b)(1) for any count. That procedure is appropriate. (Pen. Code, § 1181, subd. (6); see *People v. Navarro* (2007) 40 Cal.4th 668, 676-677 [appellate court has power to modify a verdict to reflect

---

[3] Penal Code section 288, subdivision (a) makes punishable the commission of lewd or lascivious acts against a child under the age of 14 without requiring the acts to have been committed by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury.

a conviction on a lesser included offense after finding insufficient evidence supported conviction on the greater offense].)

The evidence in the present case, though insufficient to support a conviction on count 1 for violation of section 288(b), is sufficient to support a conviction for violation of Penal Code section 288, subdivision (a).[4] We conclude in part III of the Discussion section that there is substantial evidence in the record that Jane Doe was eight years old when Gonzalez committed acts alleged in count 1. Committing a lewd or lascivious act on a child under 14 years of age in violation of Penal Code section 288, subdivision (a) is a lesser included offense to committing a lewd or lascivious act by force or fear on a child under 14 years of age in violation of section 288(b)(1). (*People v. Chan* (2005) 128 Cal.App.4th 408, 421.) The jury was so instructed. Accordingly, we modify the verdict on count 1 to reflect a conviction for violation of Penal Code section 288, subdivision (a) and remand the matter for resentencing.

III.

THERE IS SUBST0ANTIAL EVIDENCE OF JANE DOE'S AGE TO SUPPORT
THE CONVICTIONS ON COUNTS 1 AND 2

In count 1, it was alleged that Gonzalez placed his hand on Jane Doe's vagina when she was eight years old "on or between July 5, 2013 to July 4, 2014." In count 2 it was alleged that Gonzalez placed his hand on Jane Doe's vagina when she was nine years old "on or between July 5, 2014 to July 5, 2015." Gonzalez contends the convictions on counts 1 and 2 must be

---

[4] Violation of section 288(b)(1) is punishable by imprisonment for five, eight, or 10 years. The trial court sentenced Gonzalez on count 1 to the low term of five years. Violation of Penal Code section 288, subdivision (a) is punishable by imprisonment for three, six, or eight years.

15

reversed because there is not substantial evidence that Jane Doe was eight and nine years old, respectively, when he committed the acts alleged in those counts.

The jury was instructed with a modified version of CALCRIM No. 3501 entitled, "Unanimity: When Generic Testimony of Offense Presented."[5] Date ranges were given for each count. "The unanimity rule has been refined in cases involving sexual molestation of children and repeated identical offenses. 'In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described.'" (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 556-557.) The victim's generic testimony constitutes substantial evidence under the unanimity rule if: (1) the victim describes the kind of acts committed with sufficient specificity to show that the acts were unlawful and to enable differentiation between the types of unlawful conduct; (2) the victim describes the number of acts committed with sufficient certainty to support each of the counts alleged; and (3) the victim describes the general time period in which the acts occurred to assure the acts were committed within the applicable limitations period. (*People v. Jones* (1990) 51 Cal.3d 294, 316.)

Gonzalez argues the evidence was insufficient to support the third requirement. We disagree. Jane Doe testified that Gonzalez touched

---

[5] The jury was instructed: "The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; [¶] OR [¶] 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged."

16

her "vagina and butt" starting when she was seven or eight years old. She testified he touched her "[s]everal times a day." Jane Doe testified she was "confident" that Gonzalez started touching her when she was seven or eight years old. During her forensic interview, Jane Doe said Gonzalez started touching her "probably like, around first grade" at "around age 7." As Jane Doe was born on July 4, 2005, her testimony established that Gonzalez touched her during date ranges alleged in counts 1 and 2.

Gonzalez cites to testimony by the forensic interviewer that she believed Jane Doe was "just guessing at 7 and 8," testimony by Mother that Jane Doe told her the touching started when Jane Doe was nine or 10 years old, and testimony by an investigating police officer that Gonzalez said in an interview that he started touching Jane Doe when she was "'about 10 years old.'" However, "'[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'" (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) "'[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.'" (*Ibid*.) Jane Doe's testimony was neither physically impossible nor inherently improbable and constituted substantial evidence supporting the convictions on counts 1 and 2.

IV.

THE COURT OPERATION ASSESSMENT AND CRIMINAL CONVICTIONS ASSESSMENT ARE STRICKEN

Gonzalez contends the $280 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) and the $210 criminal convictions assessment (Gov. Code, § 70373, subd. (a)(1)) imposed by minute order and the abstract of

judgment must be stricken because the trial court did not orally pronounce those assessments.[6]

Gonzalez is correct in asserting the trial court did not orally impose those assessments. When there is a discrepancy between the trial court's oral pronouncement and the minute order or abstract of judgment, the oral pronouncement controls. (*People v. Costella* (2017) 11 Cal.App.5th 1, 10.)

The assessments imposed under Penal Code section 1465.8, subdivision (a)(1) and Government Code section 70373, subdivision (a)(1) are mandatory and a required part of a defendant's sentence. (See *People v. Robinson* (2012) 209 Cal.App.4th 401, 405.) The Attorney General argues the oral pronouncement therefore can and should be corrected on appeal. However, because those assessments were not orally pronounced, Gonzalez did not have the opportunity to object to them pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1172-1173 based on his inability to pay. Upon resentencing on count 1, the trial court may orally pronounce the assessments on all counts and provide Gonzalez the opportunity to object to them.

---

[6] Pursuant to Penal Code section 1465.8, subdivision (a)(1), "an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense," and pursuant to Government Code section 70373, subdivision (a)(1), "an assessment [of $30] shall be imposed on every conviction for a criminal offense . . . ." Gonzalez was convicted on seven counts, leading to assessments under those code sections, respectively, of $280 and $210.

# DISPOSITION

Gonzalez's conviction and sentence on count 1 for violation of section 288(b)(1) is vacated and the judgment is modified to reflect a conviction for violation of Penal Code section 288, subdivision (a). The court operations assessment fee and criminal convictions assessment fee are stricken. The matter is remanded for the sole purposes of resentencing on count 1, imposition of those assessments, and consideration of any objection Gonzalez makes to those assessments. In all other respects, the judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

GOETHALS, ACTING P. J.

MOTOIKE, J.

19